10 N.Y.3d 647 (2008)
891 N.E.2d 1165
862 N.Y.S.2d 1
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
ROBERT FINLEY, Appellant.
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
KYLE SALTERS, Appellant.
Court of Appeals of the State of New York.
Argued April 23, 2008.
Decided June 10, 2008.
*648 Timothy Patrick Murphy, Williamsville, for appellant in the first above-entitled action.
Joseph V. Cardone, District Attorney, Albion, for respondent in the first above-entitled action.
*649 New York State Defenders Association, Albany (Alfred O'Connor of counsel), for appellant in the second above-entitled action.
Glenn MacNeill, Assistant District Attorney, Malone, for respondent in the second above-entitled action.
Chief Judge KAYE and Judges READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT dissents and votes to reverse and order a new trial in a separate opinion in which Judge GRAFFEO concurs.

*650 OPINION OF THE COURT
CIPARICK, J.
The issue in each of these appeals by defendants, inmates in New York State detention facilities, is whether small amounts of marihuana were "dangerous contraband" under Penal Law § 205.00 (4) and § 205.25 (2). We conclude that they were not.

I.

People v Salters
On March 31, 2004, the grand jury of Franklin County issued a two-count indictment charging defendant Salters with attempted promoting prison contraband in the first degree, a class E felony, and fifth-degree conspiracy, a class A misdemeanor (see Penal Law §§ 110.00, 205.25 [2]; § 105.05 [1]). These charges arose out of an investigation conducted by Investigator Dennis Klose of the Department of Correctional Services (DOCS) Inspector General's Narcotics Unit. While monitoring a phone call between defendant and his girlfriend, Klose heard what he believed was a plan to smuggle narcotics into Bare Hill Correctional Facility, where defendant was incarcerated. On November 16, 2003, prison officials stopped defendant's girlfriend, after she passed through security, and she admitted to concealing marihuana. She was then driven to a nearby State Police barracks, where she surrendered 9.3 grams of marihuanaless than one third of an ounce.
Prior to trial, defendant moved to dismiss the indictment or, alternatively, to reduce the charges to attempted promoting prison contraband in the second degree and sixth-degree conspiracy, both misdemeanors. Relying upon the Appellate Division's decision in People v McCrae (297 AD2d 878 [3d Dept 2002]), which reasoned that marihuana was dangerous contraband because "the use of illegal drugs by inmates ... can result in disruptive and dangerous behavior among the inmate population" (id. at 878), Supreme Court declined to dismiss the indictment.
At trial, Senior Investigator James Bezio, who had extensive experience with drug investigations during his 16 years with the Narcotics Unit, testified that 9.3 grams of marihuana is an amount large enough to be distributed to other inmates, which created two possible problems. First, because ingestion of marijuana would alter inmates' mental states, those who took the drug could potentially become involved in altercations or refuse to obey correction officers' orders. Second, if an inmate *651 obtained marihuana from a prison dealer and then refused, or was unable, to pay for it, an inmate-on-inmate assault might occur, possibly resulting in injury to correction officers. Bezio acknowledged on cross-examination that, within the illicit prison barter system, an altercation between inmates could even occur over certain banned perishables, leading guards to become involved and possibly hurt. Indeed, he speculated that "anything that's smuggled into the barter system could be considered dangerous," if the definition of "dangerous" were coextensive with a potential for producing altercations among inmates and prison staff.
At the close of evidence, defendant sought to have the lesser-included misdemeanorattempted promoting prison contraband in the second degreesubmitted to the jury (see Penal Law §§ 110.00, 205.20 [2]). Supreme Court denied that request, relying on McCrae. Thereafter, the jury convicted defendant of both charged crimes, and Supreme Court sentenced him to an indeterminate term of 2 to 4 years on the felony attempted promoting prison contraband count and a concurrent one-year determinate sentence on the conspiracy count, to run consecutively to the term defendant was then serving.
The Appellate Division affirmed, concluding that Bezio's testimony was legally sufficient to support the felony contraband conviction because it provided "facility-specific proof" that 9.3 grams of marihuana is an amount that could be sold or distributed, thereby potentially precipitating altercations and disobedience that could "endanger[] the security and safety of staff and inmates" (30 AD3d 903, 905 [2006]). We now modify and remit to Supreme Court for resentencing.

II.

People v Finley
On June 24, 2004, defendant and four other inmates were standing near the "A-Block" of Orleans Correctional Facility. That area of the prison was off-limits to defendant and one of his companions, an inmate known as "Midget." Observing defendant and Midget, Correction Officer Baptiste, a 19-year veteran with 17 years' experience in the Orleans facility, determined that the two were "smuggling stuff or trying to pass something." In response, the officer directed the 60 inmates that he was charged with supervising to the inside portion of A-Block. Those inmates remained there unsupervised during the course of Officer Baptiste's encounter with defendant.
*652 At Baptiste's request, defendant produced his prison identification card from one of his pockets. A "wad of toilet paper" also emerged from the pocket and defendant threw it to the ground. Baptiste then ordered defendant to put his hands against the wall in preparation for a "pat-frisk." During the frisk, defendant took his hands off the wall and pointed toward the discarded wad. In response to defendant's pointing, Midget nodded his head as if to indicate "yes." Observing this apparent communication, Officer Baptiste questioned defendant about the wad. When defendant claimed to lack knowledge of it, Baptiste turned his back to defendant and retrieved the wad from the ground. The wad contained "[t]hree joints," one of which subsequently tested positive for marihuana. Other officers then handcuffed defendant and removed him from A-Block.
On January 24, 2005, the grand jury of Orleans County handed down an indictment charging defendant with, as relevant here, one count of promoting prison contraband in the first degree, a class D felony. To establish the dangerous nature of marihuana at defendant's trial, the People called an expert witness, Vernon N. Fonda, a Deputy Inspector General in DOCS's Narcotics Unit.
Inspector Fonda, who has served in various investigative capacities with the Narcotics Unit since 1993, opined that marihuana's status as an illegal and highly-prized prison commodity caused negative effects on prison safety and security.
He testified that defendant's possession of marihuana created a dangerous situation because it required Baptiste to leave the inmates in his care unsupervised and exposed him to a possible assault by defendant.[1] This potential danger was only heightened because defendant might have been acting "under the influence" of marihuana. Further, by throwing the wad containing the three joints to the ground, defendant created a possible danger that another inmate might grab it and flee, forcing Baptiste to leave A-Block unattended. Discarding the marihuana also exposed Baptiste to a potential attack from the rear during the time he was busy retrieving it.
On cross-examination, Fonda acknowledged that the presence of contraband food could also create a "dangerous situation" *653 inside a prison, "if [inmates have] gotten into arguments over food" that "escalate[d] into ... a fight or some type of altercation." In addition, Fonda agreed that a correction officer's supervision of 60 inmates "[a]bsolutely" has a certain degree of inherent danger. And he indicated that "in [a] broad pen[o]logical sense" the presence of marihuana in a prison is "always dangerous."
Defendant moved to dismiss the People's case on the ground of insufficient evidence, arguing that the prosecution failed to prove that the particular amount of marihuana at issue posed a danger to the Orleans facility. County Court denied the motion, reasoning that the term "dangerous," as used in Penal Law § 205.00 (4) and § 205.25 (2), "means the potential for violence and problems." County Court did hold, however, that defendant was entitled to a jury charge on the lesser-included misdemeanor of promoting prison contraband in the second degree. The jury convicted defendant of the felony promotion of contraband offense. He was sentenced as a second felony offender to an indeterminate prison term of 3 to 6 years to run consecutive to his previously imposed sentence.
The Appellate Division affirmed. Citing Salters, the court held that Fonda's testimony regarding the potential risks created when defendant threw the concealed marihuana to the ground was legally sufficient to support the felony promotion of contraband conviction because the testimony provided "specific evidence" that "the particular marihuana that was possessed by ... defendant endangered the safety of the facility" (see 42 AD3d 917, 919 [2007] [internal quotation marks and brackets omitted]). We now modify and remit to County Court for resentencing.

III.
Significantly, the Penal Law distinguishes between "contraband" and "dangerous contraband." "Contraband" is broadly defined as "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order" (Penal Law § 205.00 [3]). Within this wide-ranging category of prohibited items, the Legislature has set apart for special reprobation "dangerous contraband," or "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein" (see Penal Law § 205.00 [4]; § 205.25 [2]). Whereas possession of ordinary contraband is a misdemeanor, *654 an inmate who possesses dangerous contraband is guilty of a felony, with the possibility of substantially longer prison terms, especially, as here, for second or persistent felony offenders.[2]
Our task, therefore, is to determine whether the imposition of felony consequences, based upon possession of small amounts of marihuana, which would constitute a violation outside of prison (see Penal Law §§ 221.05, 221.10 [2] [absent aggravating circumstances, not present here, possession of 25 grams or less of marihuana is a noncriminal violation]), comports with the Legislature's intent as codified in Penal Law § 205.00 (4) and § 205.25 (2). Based on the statutory text and legislative history, we conclude that it does not.
We begin, as we must, with the plain meaning of the statute, presuming that lawmakers "have used words as they are commonly or ordinarily employed, unless there is something in the context or purpose of the act which shows a contrary intention" (McKinney's Cons Laws of NY, Book 1, Statutes § 232, Comment; see also Penal Law § 5.00 [Penal Law provisions "must be construed according to the fair import of their terms to promote justice and effect the objects of the law"]).
Here, the operative statutory language is: "capable of such use as may endanger the safety or security of a detention facility or any person therein" (see Penal Law § 205.00 [4]). The word "use" refers to the "application or employment" of a particular item of contraband (see Black's Law Dictionary 1577 [8th ed 2004]). Small amounts of marihuanasuch as those at issue heremay be used in many ways. These amounts can be, for example, burned, smoked or otherwise ingested. Or, as Bezio and Fonda testified, they can be used as a means of barter and extortion.
Under the People's view, the Legislature intended a definition of dangerous contraband so broad that it would capture any item that, when present in a detention facility, could lead to altercations and inmate disobedience. But the fatal flaw in the People's argument is that their proposed construction would effectively nullify the misdemeanor crime of promoting prison *655 contraband in the second degree. As the People's own experts conceded, when any contrabandbe it certain perishables or marihuanais introduced into the prison barter system, it brings with it the potential for disruption that could endanger safety and order. If, as the Appellate Divisions here held, testimony as to these possibly pernicious secondary effects were sufficient to establish the felony promoting contraband offense then every item of contraband could be classified as dangerous.[3]
We will not presume that the Legislature intended such a result when it expressly mandated harsher consequences for the possession of dangerous contraband (see People v Giordano, 87 NY2d 441, 448 [1995], quoting Sanders v Winship, 57 NY2d 391, 396 [1982] ["Under well-established principles of interpretation, effect and meaning should be given to the entire statute and every part and word thereof" (internal quotation marks omitted)]; accord Friedman v Connecticut Gen. Life Ins. Co., 9 NY3d 105, 115 [2007]). And, based on the prison contraband provisions' legislative history, we need not do so here (see People v Santi, 3 NY3d 234, 243 [2004] ["Legislative intent drives judicial interpretations in matters of statutory construction"]).
The prison contraband provisions, Penal Law §§ 205.00, 205.20 and 205.25, were codified in 1965 as part of a major revision to the Penal Law and became effective in 1967. Although the Staff Notes indicate that the definitions of contraband and dangerous contraband codified in Penal Law § 205.00 were new, they also indicate that the felony/misdemeanor distinction set forth in Penal Law §§ 205.25 and 205.20 "substantially restates" that same distinction as established in former Penal Law § 1691 (3) and (2) (see Staff Notes of Temp St Commn on Rev of Penal Law and Crim Code, 1964 Proposed NY Penal Law [Study Bill, 1964 Senate Intro 3918, Assembly Intro 5376], at 373 [describing Penal Law §§ 210.00 (definitions of "contraband" and "dangerous contraband"), 210.30 (misdemeanor offense) and 210.35 (felony offense), later renumbered as sections 205.00, 205.20 and 205.25, respectively], reprinted in NY CLS, Book 23B, Penal Law art 205, at 495-496; see also Denzer and *656 McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.20, at 674 [1967 ed] [current sections 205.20 and 205.25 "continue" the "(g)rading of ... offenses" found in former section 1691]). Subdivision (2) made it a misdemeanor for persons not confined in a prison to convey "any drug, liquor or any article prohibited by law [or prison rules]" into a prison (see former Penal Law § 1691 [2]). In contrast, under subdivision (3), it was a felony for non-inmates to convey into a prison: "any article or thing ... which ... may be used in such manner as to endanger the safety or security of the institution, or as to endanger the life or limb of any prisoner, guard, attendant, inmate, patient or other [prison] employee" (former Penal Law § 1691 [3]).
The felony offense set forth in former Penal Law § 1691 (3) was established as part of a dual amendment to the Penal Law.[4] The other amendment, to former section 1828-a (2), pertained only to correction employees and instituted a felony/ misdemeanor distinction similar to that present in former section 1691 (3) and (2) (compare former Penal Law § 1828-a [1] [misdemeanor for correction employees to deliver or attempt to deliver "any article or thing which (a) prisoner ... is prohibited... from receiving or possessing"], with former Penal Law § 1828-a (2) [felony punishment appropriate if contraband that correction employee delivered or attempted to deliver "may be used in such a manner as to endanger the safety or security of the institution, or to endanger the life or limb of any inmate, patient or (prison) employee"]).
In keeping with the statutory distinction between felony and misdemeanor promotion of prison contraband, the Practice Commentaries to the Penal Law's current prison contraband provisions have repeatedly stated that "[a]n alcoholic beverage is an example of contraband" and "[w]eapons, tools, explosives and similar articles likely to facilitate escape or cause disorder, damage or physical injury are examples of dangerous contraband" (see Denzer and McQuillan, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.00, at *657 668 [1967 ed]; Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.00, at 435 [1975 ed] [same]; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.20, at 500 [1988 ed] [noting that "(a)n example of contraband is whiskey" and providing explanation of dangerous contraband similar to 1967 Practice Commentary]; Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 205.20 [1999 ed] [noting also that "(h)eroin has ... been found to be dangerous contraband"]).[5]
We therefore conclude that the test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility's institutional safety or security (see People v Soto, 77 Misc 2d 427, 429 [NY City Crim Ct 1974]; 6 NY Prac, Criminal Law § 23:7 and n 7 [2007 ed] ["Generally, `dangerous contraband' refers to weapons... Items that facilitate escape are also dangerous contraband"]; cf. People v Torres, 14 AD3d 801, 803 [3d Dept 2005] ["piece of plastic mirror (that) ... had the appearance of a knife" is dangerous contraband]; People v Anderson, 299 AD2d 578, 579 [3d Dept 2002] ["razor blade-type weapon"]; People v Jones, 134 AD2d 701, 702 [3d Dept 1987] ["screwdrivers ... cutting pliers ... 30 feet of wire, knotted at regular intervals, and a hand-drawn map depicting the roads outside the prison"]).
There is no evidence that such drastic results are likely to occur with the small amounts of marihuana at issue here.[6] It simply requires "too many inferences," which lack support on *658 this record, to conclude that the present small amounts of marihuana are dangerous contraband under Penal Law § 205.25 (see Soto, 77 Misc 2d at 430). If these inferences are to be drawn, it is the province of the Legislature to do so.[7]
Further, the conclusion that these small amounts of marihuanaboth substantially less than 25 gramsare not dangerous contraband is informed by the Legislature's more lenient treatment of marihuana offenses, as opposed to those involving other drugs. In passing the Marihuana Reform Act of 1977, the Legislature chose to decriminalize the possession of 25 grams or less of marihuana (see Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 221, at 173 ["Offenses Involving Marihuana"]). By way of comparison, the classification for possession of greater amounts of marihuana can range from a class B misdemeanor to a class C felony, depending upon weight (see Penal Law §§ 221.10-221.30). We do not pass on whether such greater amounts could be deemed "dangerous contraband."[8]
*659 Although prison officials surely may promulgate disciplinary rules regarding marihuana possession to ensure "the safe, orderly and effective functioning" of correctional institutions (see People v Vasquez, 89 NY2d 521, 532 [1997]), here we consider statutory text and legislative intent, not policy alternatives, as would be appropriate for the Legislature's consideration. Based on that analysis, we conclude that the small amounts of marihuana at issue in both cases are not "dangerous contraband" as that term is defined in Penal Law § 205.00 (4). We have considered the People's preservation argument in Salters and defendant Finley's constitutional argument regarding Supreme Court's denial of a challenge for cause during jury selection and find both meritless.
Accordingly, in Salters, the order of the Appellate Division should be modified by reducing the conviction of attempted promoting prison contraband in the first degree to attempted promoting prison contraband in the second degree and the conviction of conspiracy in the fifth degree to conspiracy in the sixth degree and remitting to Supreme Court, for resentencing and, as so modified, affirmed. And in Finley, the order of the Appellate Division should be modified by reducing the conviction of promoting prison contraband in the first degree to promoting prison contraband in the second degree and remitting to County Court, for resentencing and, as so modified, affirmed.
PIGOTT, J. (concurring in Finley and dissenting in Salters).
In each appeal, the jury found that the amount of marihuana at issue was dangerous contraband within the meaning of Penal Law § 205.00 (4). In Finley, I concur with the majority's conclusion that the jury's finding was not supported by legally sufficient evidence. In Salters, however, I conclude that the evidence at trial was sufficient to establish that the quantity of marihuana that defendant Salters attempted to possess was dangerous contraband. I would nonetheless reverse his conviction and order a new trial because the trial court erred in refusing to charge the jury that it may consider the lesser included offense of attempted promoting prison contraband in the second degree.
An inmate in a detention facility who "knowingly and unlawfully *660 ... possesses any dangerous contraband" is guilty of promoting prison contraband in the first degree, a felony (Penal Law § 205.25 [2]). Contraband is dangerous if it "is capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [4]). The language of the statute is broad and encompasses any item of contraband that could be used in a manner that may pose a danger to the safety of other inmates or staff, or the security of the facility. The statute emphasizes the potential for danger arising from a particular use of the contraband.[1] Some items of contraband, such as weapons, by their very nature, pose an obvious and immediate danger to the safety and security of a facility and thus clearly fall with the definition of dangerous contraband (see People v Stanley, 19 AD3d 1152, 1153 [4th Dept 2005], lv denied 5 NY3d 856 [2005]; People v Brown, 2 AD3d 1216, 1217-1218 [3d Dept 2003], lv denied 3 NY3d 637 [2004]). If the contraband at issue is not inherently dangerous, however, the People must present specific, competent proof from which the trier of fact may infer that use of the contraband could potentially create a dangerous situation inside the facility (see Stanley, 19 AD3d at 1153; Brown, 2 AD3d at 1218).
Applying this standard in Salters, I conclude that, viewed in the light most favorable to the People, the proof presented by the People was sufficient to support the jury's finding that the marihuana at issue was dangerous contraband. Specifically, Senior Investigator Bezio testified that the amount of marihuana that defendant Salters attempted to possessi.e., 9.3 gramswas "a large amount" which "would be distributed ... or sold to other inmates." He explained that drug transactions create a dangerous situation in prison because inmates often obtain drugs when they are unable to pay for them, leading to violent altercations between inmates. Bezio also noted that correction officers may be injured while attempting to quell the fighting. Bezio testified that, during his 16 years of experience as a narcotics investigator, he has found that many physical altercations between inmates result from disputes over drug debt. Indeed, according to his testimony, Bezio personally investigated "[q]uite a few" cases where an inmate was assaulted or killed over marihuana. Based on this testimony, the *661 jury could have rationally found that the amount of marihuana possessed by Salters was capable of being sold or bartered and that such use could potentially lead to violent altercations, endangering the safety of inmates and correction officers.
In holding to the contrary, the majority takes issue with permitting testimony that goes to the "pernicious secondary effects" of inmate drug commerce to establish that an item of contraband is dangerous (majority op at 655). The majority reasons that allowing such evidence to suffice would permit any contraband to be considered dangerous. I agree with the majority that proof of the potential secondary effects of an inmate's use of contraband based on mere speculation is insufficient to establish the dangerousness of contraband. A rule allowing such evidence would render meaningless the distinction between contraband and dangerous contraband (see Stanley, 19 AD3d at 1153). In this case, however, the People presented specific, uncontroverted testimony that the inmate marihuana trade has, in the past, led to violent altercations among inmates. The jury was entitled to conclude from this testimony that inmates have assigned a greater value to marihuana than other items of contraband, resulting in a greater risk of violence arising from the marihuana trade.[2]
Nevertheless, because Supreme Court erred in refusing to charge the lesser included offense of attempted promoting prison contraband in the second degree, I agree with the majority that reversal is warranted here. A defendant is entitled to a lesser included offense charge where (1) "it is impossible to commit the greater crime without concomitantly committing the lesser offense by the same conduct" and (2) "a reasonable view of the evidence ... support[s] a finding that the defendant committed the lesser offense but not the greater" (People v Van Norstrand, 85 NY2d 131, 135 [1995]). The relevant inquiry is "whether, under any reasonable view of the evidence, it is possible for the trier of facts to acquit [the] defendant on the higher count and still find him [or her] guilty of the lesser one" (id. at 136).
*662 Here, there is no dispute that attempted promoting prison contraband in the second degree is a lesser included offense of the first degree offense. Moreover, the jury could have accepted Investigator Klose's factual testimony establishing the lesser offensei.e., Salters attempted to possess marihuana, an item prohibited by statute and prison regulations. At the same time, the jury could have reasonably rejected Bezio's opinion testimony as to the dangerousness of the marihuana and concluded that the marihuana was not dangerous under the facts of this case. Thus, a reasonable view of the evidence supports a finding that Salters committed the lesser offense and not the greater (see People v Hernandez, 42 AD3d 657, 661-662 [3d Dept 2007]). Accordingly, in Salters, I would reverse the conviction and remand the matter for a new trial.
In Finley, I concur with the majority's conclusion that the evidence was legally insufficient to support the felony offense. Unlike in Salters, the People's proof never established that the amount of marihuana possessed by defendant Finley was an amount that is typically sold or distributed by inmates.
Chief Judge KAYE and Judges READ, SMITH and JONES concur with Judge CIPARICK; Judge PIGOTT concurs in result in a separate opinion in which Judge GRAFFEO concurs.
In People v Finley: Order modified, etc.
In People v Salters: Order modified, etc.
NOTES
[1] Defendant, whose release from prison was imminent, complied with all of Baptiste's requests and engaged in no violence. Instead, he attempted to dissuade Baptiste from reporting the June 24th incident by stating: "Give me a break, I'm leaving in a couple of days."
[2] Penal Law § 205.20 (2) provides: "A person is guilty of promoting prison contraband in the second degree when ... [b]eing a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any contraband. Promoting prison contraband in the second degree is a class A misdemeanor." The proscription contained in Penal Law § 205.25 (2) is similar except that it applies to "dangerous contraband" and deems "[p]romoting prison contraband in the first degree ... a class D felony."
[3] There is a potential risk of flight and officer injury whenever an officer is forced to examine any sort of discarded contraband. Similarly, the potential connection between altercations, inmate disobedience and possible illicit sales does not provide a meaningful distinction between marihuana and other, non-dangerous, contraband. This is because inmates may sell and fight over debts related to any sort of contraband. And the temporary distraction of a guard whether to inspect for marihuana or any other contraband always presents inmates with a potential ability to engage in disruptive behavior.
[4] These two amendmentsto former sections 1691 (3) and 1828-a (2) were motivated by a 1953 incident in which a prison pharmacist gave an inmate at Dannemora State Hospital for the criminally insane a loaded revolver (see Letter from Assemblyman James A. FitzPatrick to George M. Shapiro, Counsel to the Governor, Mar. 30, 1954, Bill Jacket, L 1954, chs 731, 732, at 7). At the time it occurred, such conduct was punishable only as a misdemeanor (see id.).
[5] Coupled with the fact that under former section 1691 (2) the conveyance of "any drug [or] liquor" into a prison constituted a misdemeanor and the Practice Commentaries' repeated statement that alcoholic beverages are "contraband," the People's reliance upon the mind-altering effects of small amounts of marihuana to establish dangerousness is misplaced.
[6] The dissent argues that Senior Investigator Bezio "present[ed] specific, competent proof" that the 9.3 grams of marihuana in Salters "was capable of being sold or bartered and that such use could potentially lead to violent altercations, endangering the safety of inmates and correction officers" (dissenting op at 660, 661). But Bezio never stated that he had ever witnessed a serious violent altercation over such a small amount of marihuana. Rather, he testified regarding altercations that arose over debts accrued for certain unidentified "drugs." He further stated that some unspecified quantity of marihuana was involved in "[q]uite a few" incidents in which individuals were "hurt or killed."

In any event, as we explain above, the text and legislative history of the prison contraband provisions and the Legislature's passage of the Marihuana Reform Act of 1977 persuade us that even if Bezio's testimony had been more precise, it would have still been insufficient.
[7] We note that the Kentucky Legislature has specifically defined "any quantity of marijuana" as "dangerous contraband" and made possession thereof a felony (see Ky Rev Stat Ann § 520.010 [3]; § 520.050 [1] [b]; [2]). And federal law expressly defines "marijuana" as prison contraband, punishing its possession in federal prison by a fine or up to five years' additional imprisonment to run consecutive to the sentence then being served, or both (see 18 USC § 1791 [b] [3]; [c], [d] [1] [B]).
[8] We reject the People's argument that the distinction between contraband and dangerous contraband turns on whether an item is legal or illegal outside of prison. The People cite to no authority supporting this contention. It is obvious that an item, such as a razor, may be perfectly legal outside prison and yet constitute dangerous contraband when introduced into that unpredictable environment (cf. People v Johnson, 24 AD3d 803, 803-804 [3d Dept 2005] ["razor blade" constitutes dangerous contraband]).

Likewise, the People's reliance on the Standards of Inmate Behavior fails. Those standards do provide that "inmate[s] shall not make, possess, sell or exchange any narcotic, narcotic paraphernalia, controlled substance, or marijuana [and] ... shall not conspire with any person to introduce such items into [detention] facilit[ies]" (State of New York Department of Correctional Services, Standards of Inmate Behavior: All Institutions § 113.25 [rev ed Feb. 2006]). But the Standards make no effort to classify dangerous contraband. Instead, they simply list marihuana along with many other seemingly innocuous items, including "stamps in excess of $20 in value," "more than two packages of cigarettes" and "any ... material which has been disapproved by the Media Review Committee," under the expansive category of "Contraband" (see id. §§ 113.16, 113.19, 113.21, 113).
[1] If the Legislature intended to require a higher level of certainty that danger would result from use of the contraband, it could have so provided (see e.g. Penal Law § 10.00 [13] [defining "(d)angerous instrument" as "any instrument... which, under the circumstances in which it is used, ... is readily capable of causing death or other serious physical injury"]).
[2] As the majority explains, the predecessor statute to the second degree promoting prison contraband offense expressly included drugs in the former misdemeanor offense. In my view, the Legislature's election not to do so in enacting the new misdemeanor offensePenal Law §§ 205.20 and 205.00 (3)demonstrates, if anything, an intent to permit the trier of fact to classify drugs as either contraband or dangerous contraband depending on the circumstances.