*448 OPINION OF THE COURT
Frank J. LaBuda, J.
This matter comes on by defense counsel’s request for a trial order of dismissal following the presentation of the People’s direct case and, again, after defendant’s presentation to a trial jury.
This court reserved on the decision as the issue is a first impression issue in the State of New York.
Following the jury’s guilty verdict, both the People and the defense briefed the issue and sentencing has been adjourned pending this court’s decision.
The defendant was charged under indictment No. 215S-2010 with one count of promoting prison contraband in the first degree (Penal Law § 205.25), a class D nonviolent felony.
The gravamen of this charge is that the defendant, being a person confined in a detention facility,[1] knowingly and unlawfully possessed dangerous contraband, to wit: a Motorola cell phone and charger. The facts of this case are little in dispute in that there is no question that the defendant knowingly possessed contraband, i.e., a cell phone, since a defendant’s knowing possession refers only to the voluntariness of the possession itself, and may be established by his own testimony. (People v Perry, 67 AD3d 1046, 1048 [3d Dept 2009].) Here, the defendant admitted to the Department of Correctional Services’ investigators that the cell phone found in his possession was his and the defense at trial argued that it was just “innocent” possession of contraband and not dangerous.
Pursuant to Penal Law § 205.00 (3), contraband means “any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order.”
Penal Law § 205.00 (4) defines dangerous contraband as contraband which is “capable of such use as may endanger the safety or security of a detention facility or any person therein” (emphasis added).
Whether a cell phone in an inmate’s possession within a detention facility is dangerous contraband remains the sole issue of law and fact to be decided in this case.
From the outset of the case, the defendant has admitted, and it is undisputed, that he possessed a cell phone while incarcer *449 ated in state prison. Defendant argues that the possession and use of the cell phone was not dangerous since the defendant’s only use was to call his wife and family regarding certain marital difficulties. At trial, there was not a scintilla of evidence disputing the defendant’s claim that the cell phone was not used for any other purpose than calling his family. Thus, the defendant again argued that the cell phone is merely contraband, making possession thereof in state prison a class A misdemeanor, and that it is not dangerous contraband as required to elevate the possession in state prison to a class D felony.
The People argued at trial and herein that a cell phone is by its very nature dangerous contraband, and it need not be established that the cell phone was actually or, intended to be, used to endanger the security of the Woodbourne Correctional Facility or those therein. The People argued that the cell phone is capable of such use as may endanger the safety and security of the detention facility and those therein. Thus, the defendant’s admitted innocent use of the cell phone established possession thereof in state prison and provided the jury with a proper legal basis for its finding that the cell phone is dangerous contraband[2] and the defendant was guilty of possession thereof.
The New York Court of Appeals has opined its explanation of what is dangerous contraband, raising the instant issue as to whether the characteristics of a cell phone are sufficiently dangerous as to distinguish between dangerous contraband and the lesser charge of contraband. Those characteristics both statutorily and judicially do not include any element of intent to use the item unlawfully by the defendant, since it is the item itself that is determinative as to the issue of whether the item creates the proscribed, “substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security.” (Finley at 657 [emphasis added].)
Despite no direct history addressing the legislative intent in enacting section 205.25 of the Penal Law, the Court of Appeals has rejected the presumption that dangerous contraband should be so broad as to incorporate “any item that, when present in a detention facility, could lead to altercations and inmate disobe *450 dience,” noting the harsher felony consequences for possessing dangerous contraband, as compared to contraband. (Id. at 654.)
While the court cannot anticipate the various types of dangerous objects that may be crudely manufactured or acquired by inmates within a detention facility from nondangerous items, there are some items so obviously capable of being “used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security.” For instance, certain items on their face may pose a threat in their unaltered form as the Court of Appeals noted in Finley, i.e., knives, guns, maps, etc. Since the Department of Correctional Services (DOCS)[3] has promulgated no list of dangerous contraband, this court can only apply case law and common sense to what is dangerous contraband.
One test for determining whether an item is dangerous contraband is “whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security.” (Finley at 657 [emphasis added].) In Finley, the Court of Appeals held that a rolled up pack of toilet paper containing three marijuana joints did not fall within the statutory definition of dangerous contraband as defined by Penal Law § 205.00 (4) which was enacted in 1965, and most recently amended in 1972. The Court of Appeals concluded that because the amount of marijuana in the inmate’s possession was so minuscule, there was not a “substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security.” (Finley at 657.)
In People v Soto (77 Misc 2d 427 [Crim Ct, Bronx County 1974]) the court opined that to say that marijuana once consumed by an inmate would make him potentially dangerous would contain too many inferences and would change the legal definition of “dangerous contraband.”
While small amounts of marijuana within a detention facility are found to be the lesser offense of contraband, marijuana *451 itself can become dangerous contraband when possessed in larger amounts. In People v Finley (10 NY3d 647, 651 [2008]), the Court of Appeals opined that where an inmate[4] who had attempted to have his girlfriend smuggle 9.3 grams of marijuana into a state correctional facility, the marijuana was dangerous contraband. The Court of Appeals reasoned that “9.3 grams of marijuana is an amount large enough to be distributed to other inmates,” and when drugs are possessed in a distributable amount, it becomes dangerous contraband for two reasons: (1) ingestion of marijuana would alter inmates’ mental states leading to altercations or refusing to obey orders, and (2) if an inmate obtained marijuana from a prison dealer and then refused, or was unable to pay for it, an inmate-on-inmate assault might occur, possibly resulting in injury to correction officers. (Id. at 650-651.)
While dangerous contraband generally has been used in connection with weapons, it is well established by our courts that items that may facilitate an escape are also properly considered dangerous contraband because they endanger the safety or security of a facility. (People v Wilson, 56 AD3d 1266, 1267 [4th Dept 2008].) In Wilson, it was concluded that a mere “drawing of the recreation yard and back area of the jail [wa]s an item that could facilitate escape and thus constituted] dangerous contraband” (emphasis added), even though there was not an escape or other evidence indicating an escape.
Where the contraband is not a weapon per se, the inquiry of whether such item constitutes dangerous contraband must be resolved objectively, based on the “substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security” (see People v Finley at 657 [emphasis added]).
Section 205.00 (3) explicitly grants DOCS the authority to declare what is contraband, which an inmate would be “prohibited from obtaining or possessing by statute, rule, regulation or order” (emphasis added). Despite the nonexistence of any memoranda, rule or order by DOCS that lists what is considered dangerous contraband, our courts in New York State have found various types of prohibited items to be dangerous contraband. For example, knives (People v Nunez, 186 AD2d 317 [3d Dept *452 1992]), razor blades (People v Perry, 67 AD3d 1046 [3d Dept 2009]), drawings of prison yard (People v Wilson, 56 AD3d 1266 [4th Dept 2008]), and drugs (People v Finley, 10 NY3d 647 [2008]; People v Louder, 74 AD3d 1845 [4th Dept 2010]) have all been found to be dangerous contraband because of the probability that those items will be used in a manner that is “likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility’s institutional safety or security.” (People v Finley at 657.)
For plea purposes, some courts in New York have established that possession of a cell phone itself can be dangerous contraband, so long as the defendant specifically states that he was in possession of “dangerous contraband.” (People v Brown, 75 AD3d 655, 656 [3d Dept 2010]; contrast People v Pagan, 36 AD3d 1163, 1164-1165 [3d Dept 2007] [requiring further inquiry where defendant refused to explicitly acknowledge cell phone as “dangerous”].)
Recently, several other state and federal courts have found cell phones to be dangerous contraband. For example, in Burdell v Morgan (2006 WL 1045501 [2006]), the Kentucky Court of Appeals found a cell phone to be dangerous contraband. There, a cell phone was discovered in a pickup truck used by a road crew of prisoners. The defendant later was charged and convicted of possession of dangerous contraband. In upholding the lower court’s conviction, the Kentucky Court of Appeals stated that, “[c]learly, a cell phone could be used to facilitate an escape” and simply because the defendant “did not use the cell phone to aid an escape attempt does not mean that a cell phone could not be used for that purpose.” (Id. at *2; see also Malone v Caruso, 2011 WL 806617 [WD Mich 2011]; McMullen v Director, TDCJ-CID, 2011 WL 1113500 [ED Tex 2011]; Kalasho v Martin, 2005 WL 1355065 [ED Mich 2005].)
Telecommunication by cell phones, iPods, and the like allow the possessor to contact persons, or obtain sources of information, without face-to-face interaction. Thus, use by inmates cannot be controlled or monitored in a detention facility, and for this precise reason they are banned for any staff, officer or inmate to possess.
Along with other states’ judicial findings that cell phones are dangerous contraband, some states have enacted legislation that speaks directly to cell phones as contraband, or *453 dangerous contraband. For example, by statute in Texas,[5] items prohibited in a correctional facility include “a cellular telephone or other wireless communications device or a component of one of those devices to a person in the custody of a correctional facility” (emphasis added); Louisiana has a statute[6] specifically addressing the prohibition of telecommunications equipment “including but not limited to cellular phones . . . whether or not such equipment may be intended for use in planning or aiding an escape or attempt to escape from any institution” (emphasis added); Pennsylvania explicitly prohibits[7] an inmate’s “possession [of] any telecommunication device,” as well as declaring it a first degree misdemeanor for any person who “puts [a telecommunication device] in any place where it may be obtained by an inmate” (emphasis added); Illinois makes possession of any electronic contraband, meaning, “any electronic, video recording device, computer, or cellular communications equipment, including, but not limited to, cellular telephones, cellular telephone batteries” a class 1 felony.[8] On the other hand, Kansas, through its legislature, has specifically reserved the definition of contraband to its own correctional departments, “defined as contraband by rules and regulations adopted by the secretary of corrections, in a state correctional institution or facility by an employee of a state correctional institution” (emphasis added).[9]
In the within case the People argued that unlike calls from a monitored prison phone landline, conversations between an inmate and those whom he chooses to reach with a cell phone cannot be monitored by the detention facility. This poses an immediate safety risk to any institution where an inmate possesses a cell phone, given the possibility that cell phones would allow inmates to conduct clandestine dealings with the outside world to form an escape plan, arrange for a murder of a prosecution witness[10] or coordinate other illegal operations from within a detention facility. Additionally, these security risks *454 were emphasized at trial through the testimony of Superintendent Walsh,[11] who testified that correctional officers, civil employees, nor himself, are allowed to possess a cell phone while inside a correctional facility because of the inherent risk that they pose to security and safety of staff and inmates.
Thus, there is a need for legislative and administrative guidance. Just as the New York State Penal Law distinguishes between items of contraband and items of dangerous contraband, so should DOCS, through its internal rules and regulations publish a list[12] of items readily determined to be dangerous contraband by the Department of Correctional Services. Considering the fact that section 205.25 of the Penal Law exists to ensure the safety of persons working and detained within DOCS, it would seem both practical and necessary for DOCS itself to have a formal list of items that it determines to be dangerous contraband. The courts should be the last, not the first, to determine what types of contraband are dangerous, or pose a substantial probability of threat to human safety within our detention facilities.
While administrative guidance could be achieved if DOCS were to articulate a list of the items it believes to be dangerous contraband because of their capabilities, common sense advises us that cell phones pose an inherent security risk to employees of DOCS and fellow inmates, if possessed by an inmate as evidenced by the plain language of the dangerous contraband statute itself.[13]
By its verdict in the instant case the voice of the community has spoken that mere possession of a cell phone by an inmate is dangerous.
This court fully finds that as a matter of law a cell phone, no matter how a defendant may use it, is inherently dangerous because a cell phone or other telecommunication device has a substantial probability that the item itself may be used in a manner that is likely to bring out major threats to a detention *455 facility’s institutional safety or security by the defendant, or other inmates, in the facility.
Based upon the above, it is ordered, that defendant’s request for a trial order of dismissal is denied, and it is further ordered, that the jury verdict is sustained.

. The defendant, Barry Green, was serving a sentence at the Woodbourne Correctional Facility, a medium security prison.

. This court charged the jury at the request of the defendant with the verbatim language of the Court of Appeals judicial definition of dangerous contraband. (People v Finley, 10 NY3d 647 [2008].)

. As for example, the Department of Correctional Services could list any object which is inherently dangerous (i.e., guns, knives, cell phones, maps of the prison yard, explosives, etc.) that would have the same force and effect as other regulations issued by other state agencies, e.g., Department of Motor Vehicles or Department of Environmental Conservation.

. The crime applies equally to a person smuggling contraband into a prison as well as to an inmate who receives or otherwise gains possession of contraband.

. Tex Penal Code Ann § 38.11 (a) (3).

. La Rev Stat Ann § 14:402 (D) (9).

. 18 Pa Cons Stat Ann § 5123 (c.l), (c.2).

. 720 111 Comp Stat 5/31A-1.1 (c) (2) (xi).

. Kan Stat Ann § 21-3826 (b) (2) (B).

. In November 2009, Ulster County, New York jail authorities said a defendant ordered the execution-style killing of a prosecution witness against him by using a monitored phone within the jail, and the defendant is currently standing trial for that murder. (Times Herald Record, June 2011.)

. Employed by DOCS as Superintendent of Sullivan Correctional Facility and Supervising Superintendent of the Sullivan Hub (Sullivan, Woodbourne, Eastern, Ulster, Shawangunk, Wallkill, and Otisville) for over 30 years.

. The list need not be exclusive and can use the Penal Law § 205.00 (4) definition of dangerous contraband.

. Penal Law § 205.00 (4) requires only that the contraband be “capable of such use as may endanger the safety or security of a detention facility or any person therein” (emphasis added).