People v Flagg (2018 NY Slip Op 07849)





People v Flagg


2018 NY Slip Op 07849


Decided on November 16, 2018


Appellate Division, Fourth Department


Curran, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, CURRAN, AND TROUTMAN, JJ.


895 KA 16-01323

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DANIEL FLAGG, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (NATHANIEL V. RILEY OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (NICOLE K. INTSCHERT OF COUNSEL), FOR RESPONDENT. 


Curran, J.
 Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered August 13, 2015. The judgment convicted defendant, upon a jury verdict, of promoting prison contraband in the first degree and criminal possession of a controlled substance in the seventh degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice and on the law by reducing the conviction of promoting prison contraband in the first degree (Penal Law § 205.25 [2]) under the first count of the indictment to promoting prison contraband in the second degree (§ 205.20 [2]) and vacating the sentence imposed on that count, and as modified the judgment is affirmed and the matter is remitted to Onondaga County Court for sentencing on that conviction.
Opinion by Curran, J.:
Defendant, an inmate at the Onondaga County Correctional Facility, was charged with promoting prison contraband in the first degree (Penal Law § 205.25 [2]) and criminal possession of a controlled substance in the seventh degree (§ 220.03). The charges arose after correction officers recovered from defendant a disposable glove that contained four Tramadol pills. After a jury trial, defendant was convicted of both counts.
On appeal, defendant contends that the evidence is legally insufficient to establish that four Tramadol pills constitute "dangerous" contraband as required for his conviction of promoting prison contraband in the first degree, or, alternatively, that the verdict is against the weight of the evidence. As an initial matter, although defense counsel moved at the close of the People's case for a trial order of dismissal, and later renewed that motion at the close of proof, his general objections were not sufficiently specific to alert County Court of the issue raised on this appeal concerning the "dangerous" nature of the contraband. Thus, defendant's legal sufficiency contention is not preserved for our review (see People v Jackson, 159 AD3d 1372, 1373 [4th Dept 2018], lv denied 31 NY3d 1083 [2018]; People v Miller, 96 AD3d 1451, 1452 [4th Dept 2012], lv denied 19 NY3d 999 [2012]). Nonetheless, we exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
For the crime of promoting prison contraband in the first degree, the People were required to present competent evidence establishing that defendant was "confined in a detention facility" and "knowingly and unlawfully ma[de], obtain[ed] or possess[ed] any dangerous contraband" (Penal Law § 205.25 [2]). Penal Law § 205.00 (4) defines "[d]angerous contraband" as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein." The Court of Appeals in People v Finley (10 NY3d 647 [2008]) considered the unrelated prosecutions of two inmates for promoting and attempted promoting prison contraband in the first degree, both involving small amounts of marihuana. The Court [*2]pronounced the test for courts to apply:
"[T]he test for determining whether an item is dangerous contraband is whether its particular characteristics are such that there is a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats to a detention facility's institutional safety or security" (id. at 657).
The Court noted that "the distinction between contraband and dangerous contraband" does not turn upon "whether an item is legal or illegal outside of prison . . . [inasmuch as] [i]t is obvious that an item, such as a razor, may be perfectly legal outside prison and yet constitute dangerous contraband when introduced into that unpredictable environment" (id. at 658 n 8). In both of the cases reviewed by the Court in Finley, the People proffered evidence that the small amounts of marihuana were dangerous contraband because the marihuana could cause altered mental states leading to altercations and noncompliance; unrest could arise from the business or bartering trade for marihuana; and unrest over the marihuana could cause harm, i.e., assaults to correction officers (see id. at 650-652). None of that evidence, either singularly or collectively, was found by the Court to be legally sufficient evidence of dangerousness. As the Court observed, if such "possibly pernicious secondary effects were sufficient to establish the felony promoting contraband offense then every item of contraband could be classified as dangerous" (id. at 655).
In this case, the People presented testimony from a correction officer that the Tramadol posed a danger to both the inmates and the jail personnel because "inmates will fight over the drugs and the inmates get high and fight with the staff." Another correction officer testified that Tramadol is a "serious safety risk" in that it may cause serious injury or death to other inmates, because "if someone is high on the unit you don't know what they're going to do . . . He could attack a corrections officer, attack another inmate. A lot of weird stuff happens." For those same reasons, the correction officer testified that it was a safety risk of injury or death or serious physical injury to staff. A Sheriff's detective assigned to investigate the matter testified for the People that Tramadol is classified as a "dangerous contraband" because:
"if somebody is not prescribed medication it could be bad for their health. It could, ultimately, you know, result in death. The other reason is controlled substances have a higher value within the facilities so if traded or sold amongst the inmates it could result in any type of assault, fight, anything like that."
Like in Finley, the evidence presented here by the People can only be considered broad penological concerns and speculative and conclusory testimony. None of that evidence establishes a "substantial probability" that the Tramadol would bring about a "major threat" to the safety or security of the facility (id. at 657). Nor was there any way for the jury to reasonably determine from that evidence whether there was a "substantial probability" that ingesting the pills would likely "cause death or other serious injury" to a person (id.). What we find particularly lacking from the People's evidence in this case is any evidence regarding the dosage levels of Tramadol or any effect that the four pills would have on an individual, particularly on defendant. Accordingly, upon our review of the dangerousness element of promoting prison contraband in the first degree, we conclude that the People failed to introduce sufficient evidence to establish that the four Tramadol pills possessed by defendant were dangerous contraband (see id. at 659). In light of our determination, we conclude that, pursuant to CPL 470.15 (2) (a), the judgment should be modified by reducing defendant's conviction of promoting prison contraband in the first degree to promoting prison contraband in the second degree (Penal Law § 205.20 [2]; see generally People v Cole, 43 AD3d 1295, 1296 [4th Dept 2007]).
We recognize that, after Finley was decided, some courts have considered cases involving the possession of drugs other than marihuana and have concluded that the possessed drugs were dangerous contraband on what may be viewed as less "specific, competent proof" of a substantial probability that the item will be used in a manner that is likely to cause death or other serious injury, to facilitate an escape, or to bring about other major threats (Finley, 10 NY3d at 660 [Pigott, J., concurring in part and dissenting in part]). For example, testimony that the defendants were engaged in drug trafficking has been held to be sufficient to establish that there was dangerous contraband (see e.g. People v Ariosa, 100 AD3d 1264, 1265-1266 [3d Dept 2012], lv denied 21 NY3d 1013 [2013]; People v Cooper, 67 AD3d 1254, 1256-1257 [3d Dept 2009], lv denied 14 NY3d 799 [2010]). We disagree with those cases to the extent that they do not focus on the dangerousness of the use of the particular drug at issue, but instead focus on broad [*3]concerns that could involve any sort of contraband, such as alcohol, cigarettes or other items that are not dangerous in themselves (cf. People v Verley, 121 AD3d 1300, 1301 [3d Dept 2014], lv denied 24 NY3d 1221 [2015] [heroin was dangerous contraband inasmuch as the People presented evidence the defendant who ingested the heroin was found on the floor of his cell, unresponsive with shallow breathing, constricted pupils and low oxygen saturation levels]). Drugs, unlike other contraband such as weapons, are not inherently dangerous and the dangerousness is not apparent from the nature of the item. Such general concerns about the drugs possessed that are not addressed to the specific use and effects of the particular drug are insufficient to meet the definition of dangerous contraband. Indeed, the determination of what types and quantities of drugs are "dangerous contraband" per se is one that should be left to the Legislature.
Defendant further contends that the verdict is against the weight of the evidence with respect to his criminal possession of a controlled substance in the seventh degree conviction because the People failed to establish that he knowingly possessed Tramadol, as opposed to Tylenol. We reject defendant's contention. While it would not have been unreasonable for the jury to have accepted defendant's testimony that he thought the pills were Tylenol, the jury was in the best position to weigh the competing evidence on that issue, including, among other things, that defendant went to great lengths to hide the contraband, he was in a cell next to someone who was prescribed Tramadol, and a "fishing line" was found in defendant's cell (see generally People v Sommerville, 159 AD3d 1515, 1516 [4th Dept 2018], lv denied 31 NY3d 1121 [2018]; People v Schumaker, 136 AD3d 1369, 1371 [4th Dept 2016], lv denied 27 NY3d 1075 [2016], reconsideration denied 28 NY3d 974 [2016]). Thus, viewing the evidence in light of the elements of that crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Finally, we reject defendant's contention that he received ineffective assistance of counsel. Defense counsel's failure to seek sanctions or preclusion of any reference to "fishing" because of the destruction of evidence, i.e., a video recording of the search of defendant's cell, did not render defense counsel's performance ineffective inasmuch as such a motion would have had little or no chance of success (see People v Caban, 5 NY3d 143, 152 [2005]). Moreover, defendant failed "to demonstrate the absence of strategic or other legitimate explanations for counsel's" alleged ineffectiveness in failing to make particular arguments or take particular actions such as requesting an adverse inference charge (People v Rivera, 71 NY2d 705, 709 [1988]). We conclude that the record, viewed as a whole, demonstrates that defense counsel provided meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]). Defense counsel effectively cross-examined witnesses, brought to the jury's attention the missing video footage, made a coherent closing statement and was successful in obtaining a lesser
included charge on the verdict sheet.
Entered: November 16, 2018
Mark W. Bennett
Clerk of the Court