People v Ruvalcaba (2020 NY Slip Op 05354)





People v Ruvalcaba


2020 NY Slip Op 05354


Decided on October 2, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, CURRAN, AND WINSLOW, JJ.


523 KA 19-01423

[*1]THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,
v
DAMION R. RUVALCABA, DEFENDANT-RESPONDENT. 






SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR APPELLANT.
TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from an order of the Monroe County Court (Sam L. Valleriani, J.), dated April 5, 2019. The order, insofar as appealed from, granted in part defendant's omnibus motion and reduced count one of the indictment to criminal obstruction of breathing or blood circulation. 
It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law, that part of defendant's omnibus motion seeking to dismiss or reduce count one of the indictment is denied, count one of the indictment is reinstated, and the matter is remitted to Monroe County Court for further proceedings on the indictment.
Memorandum: The People appeal from an order granting that part of defendant's omnibus motion seeking to dismiss or reduce count one of the indictment, charging the crime of strangulation in the second degree (Penal Law § 121.12), by reducing that count to criminal obstruction of breathing or blood circulation (§ 121.11). The charges arose from an incident in which defendant allegedly choked and assaulted his girlfriend in the presence of their infant daughter. County Court determined, based on its review of the grand jury minutes, that "[t]he People's theory of prosecution as presented to the grand jury was that defendant committed strangulation in the second degree by choking the alleged victim thereby causing her 'stupor.' " The court further concluded that the grand jury proceeding was defective with respect to the strangulation charge because "[t]he prosecutor did not offer a definition of the necessary element of stupor to the grand jury." Based on its determination that the evidence was legally sufficient "to establish defendant's commission of the lesser included offense of criminal obstruction of breathing or blood circulation," however, the court reduced the charge of strangulation in the second degree to criminal obstruction of breathing or blood circulation. We reverse the order insofar as appealed from.
We agree with the People that the court erred in determining that the failure of the prosecutor to offer a definition of the term "stupor" rendered the grand jury proceedings defective with respect to the charge of strangulation in the second degree. A grand jury proceeding is defective if it "fails to conform to the requirements of [CPL] article [190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]). "[D]ismissal of an indictment under CPL 210.35 (5) must meet a high test and is limited to instances of prosecutorial misconduct, fraudulent conduct or errors which potentially prejudice the ultimate decision reached by the [g]rand [j]ury" (People v Sheltray, 244 AD2d 854, 855 [4th Dept 1997], lv denied 91 NY2d 897 [1998] [internal quotation marks omitted]; see People v Huston, 88 NY2d 400, 409 [1996]). A grand jury "need not be instructed with the same degree of precision that is required when a petit jury is instructed on the law," and it is "sufficient if the [prosecutor] provides the [g]rand [j]ury with enough information to enable it intelligently to decide whether a crime has been committed and to determine whether there exists legally sufficient evidence to establish the material elements of the crime" (People v Calbud, Inc., 49 NY2d 389, 394-395 [1980]).
In order to sustain the charge of strangulation in the second degree against defendant, the People were required to present to the grand jury legally sufficient evidence of the following three elements: (1) that defendant applied pressure on the throat or neck of the alleged victim; (2) that defendant did so with the intent to impede the normal breathing or circulation of the blood of the alleged victim; and (3) that defendant thereby caused stupor, loss of consciousness for any period of time, or any other physical injury or impairment to the alleged victim (see Penal Law § 121.12; CJI2d [NY] Penal Law § 121.12).
Here, the prosecutor's instructions to the grand jury comported with the statute and mirrored the pattern criminal jury instructions (see Penal Law § 121.12; CJI2d [NY] Penal Law § 121.12), and we conclude that the failure of the prosecutor to offer a definition of the term "stupor" did not impair the integrity of the grand jury proceedings or potentially prejudice defendant (see generally People v Talley, 273 AD2d 883, 883 [4th Dept 2000], lv denied 95 NY2d 893 [2000]). The term "stupor" is not defined in the Penal Law (see generally §§ 10.00, 121.12), but we "presum[e] that lawmakers have used words as they are commonly or ordinarily employed, unless there is something in the context or purpose of the [statute] which shows a contrary intention" (People v Finley, 10 NY3d 647, 654 [2008] [internal quotation marks omitted]). Like other statutory provisions, "those contained in the Penal Law are generally to be construed so as to give effect to their most natural and obvious meaning" (People v Burman, 173 AD3d 1727, 1727 [4th Dept 2019] [internal quotation marks omitted]; see also § 5.00), and we conclude that the grand jury did not require additional instruction to apply the "most natural and obvious meaning" of the term "stupor" in reaching its conclusion (Burman, 173 AD3d at 1727 [internal quotation marks omitted]). Notably, the grand jury made no request for a definition or explanation of the meaning of that term.
We also agree with the People that the evidence before the grand jury was legally sufficient to sustain the charge of strangulation in the second degree. In reviewing the evidence before a grand jury, "a reviewing court must consider 'whether the evidence viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury' " (People v Bello, 92 NY2d 523, 525 [1998], quoting People v Jennings, 69 NY2d 103, 114 [1986]). Legally sufficient evidence is "competent evidence which, if accepted as true, would establish every element of an offense charged" (CPL 70.10 [1]). "In the context of a [g]rand [j]ury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt . . . The reviewing court's inquiry is limited to whether the facts, if proven, and the inferences that logically flow from those facts supply proof of every element of the charged crimes" (Bello, 92 NY2d at 526 [internal quotation marks omitted]).
Here, the alleged victim testified before the grand jury that defendant "put both of his hands around [her] neck and choked [her] until [she] could barely breathe anymore" and "was starting to lose consciousness." She was "pushed up against the wall and the door" and felt "[v]ery light-headed and kind of like—like there was a buzzing in [her] head and everything was starting to turn purple in [her] vision before—by the time [the alleged victim] got him to let go." She fell to the ground and "started to gasp for air," and defendant kicked her in the head while she was on the ground. The alleged victim told defendant that she would call the police, to which defendant responded: "No you're not because you're going to go to sleep." The alleged victim testified that she suffered pain as a result of defendant hitting and choking her, which lasted for a few days and that she took ibuprofen to manage her pain. During her testimony, which occurred five days after the incident, the alleged victim displayed to the grand jury the bruising that remained on her forehead, cheek, and left arm.
Even assuming, arguendo, that the People's theory of the case as presented to the grand jury was, as the court determined, that defendant caused only stupor and no other physical injury or impairment to the alleged victim, we conclude that her testimony that defendant applied pressure to her neck with the intent to impede her normal breathing or circulation of blood and that he caused her to be able to barely breathe and to feel light-headed, to gasp for air, and to have purple vision provided legally sufficient evidence of stupor (see People v Manigault, 150 AD3d 1331, 1332-1333 [3d Dept 2017], lv denied 29 NY3d 1130 [2017]).
Furthermore, we agree with the People that the prosecutor did not limit the People's case to the theory that defendant caused "stupor" but not "any other physical injury or impairment" to the alleged victim (Penal Law § 121.12) and that the People were not required to so limit their [*2]theory. The harms resulting from the strangulation are stated disjunctively in the statute and, based on our review of the grand jury minutes, we conclude that the People's theory also could have been that defendant caused "any other physical injury or impairment" to the alleged victim (id.), as set forth in the bill of particulars. Inasmuch as the alleged victim testified that, as a result of defendant choking and striking her, she felt pain for several days and took ibuprofen to manage the pain, we conclude that the evidence before the grand jury was also legally sufficient to establish that defendant caused "impairment of physical condition or substantial pain" (§ 10.00 [9]; see CJI2d [NY] Penal Law § 121.12; People v Talbott, 158 AD3d 1053, 1054 [4th Dept 2018], lv denied 31 NY3d 1088 [2018]; see also People v Funk, 166 AD3d 1487, 1487-1488 [4th Dept 2018], lv denied 32 NY3d 1172 [2019]; People v Pettine, 50 AD3d 1517, 1517-1518 [4th Dept 2008]).
Entered: October 2, 2020
Mark W. Bennett
Clerk of the Court