# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 12, 2009

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

137979

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

NATHANIEL WARD,
        Defendant-Appellant.

SC: 137979
COA: 288318
Grand Traverse CC:
07-010368-FH

_____/

On order of the Court, the application for leave to appeal the November 12, 2008 order of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

YOUNG, J. (*concurring*).

I concur in this Court's order denying defendant's application for leave to appeal and write separately to respond to Chief Justice Kelly's dissent. Chief Justice Kelly's dissent reveals an unusual perspective of criminal law and criminality in general. What Chief Justice Kelly vilifies as a "ruse" and "subterfuge" is a legitimate law enforcement tactic to safely apprehend a known drug dealer. Further, because offense variable (OV) 19, MCL 777.49, plainly does not include an intent element, the caselaw from other states that Chief Justice Kelly cites is irrelevant. Accordingly, there is no basis in the law for rescoring OV 19, as Chief Justice Kelly urges.

Defendant is a career drug dealer who sold heroin, powder cocaine, and crack cocaine to a confidential informant and an undercover officer on three separate occasions between April 24, 2007, and April 30, 2007. Because the police officers possessed cash seized from defendant during a traffic stop on April 16, 2007,[1] they asked defendant to meet at a Michigan State Police post for return of the money seized. Defendant agreed and they were able to arrest him for the three prior drug sales in the safety of a controlled

---

[1] The police officers seized the money because a police dog indicated that the money contained cocaine and heroin residue.

environment. I agree that this was a "ruse," but it offends no principle of law to use a criminal's stupidity against him.

Chief Justice Kelly chooses to chastise the police officers for their "subterfuge" rather than the defendant, who knowingly carried 47 grams of crack cocaine and 20 packets of heroin *into a police station* and then attempted to smuggle the same 47 grams of crack cocaine and packets of heroin into the Grand Traverse County Jail. Chief Justice Kelly asserts that defendant "could hardly be said to have intended to engage in conduct that 'threatened the security of a penal institution.'"[2] It is hard to believe that anyone could sincerely dispute that the presence of illicit drugs "threaten[s] the security of a penal institution." Moreover, it was not "only because of a police subterfuge"[3] that defendant's behavior was a threat to the security of a penal institution. Defendant *could have* told the officers that he had the 47 grams of crack cocaine and packets of heroin in his underwear when he was arrested at the station. Instead, he *chose* to attempt to smuggle this considerable amount of drugs into the county jail. Chief Justice Kelly suggests that defendant may be excused from the consequences of that choice "because he wished not to be charged for possession with intent to deliver prohibited substances in addition to his other crimes."[4] A criminal's interest in avoiding punishment for his crimes does not, has never, and, hopefully, will never excuse criminal behavior. The law does not require courts to ignore criminal behavior; rather, it assigns consequences. "[T]rying to avoid having drugs . . . detected during booking"[5] is deviant behavior for which the law assigned a consequence—25 points for OV 19. That we may be able to theorize a defendant's motive to conceal his crime does not decriminalize the act.

OV 19 does not contain a "ruse" exception to its provisions. And, contrary to Chief Justice Kelly's argument, OV 19 does not contain an intent element. Whether defendant "*intended* to 'threaten the security of a penal institution'" is irrelevant.[6] Twenty-five points are assigned when "the offender *by his or her conduct* threatened the security of a penal institution." MCL 777.49(a) (emphasis added). Defendant's conduct —attempting to smuggle 47 grams of crack cocaine and packets of heroin into the jail— "threatened the security of a penal institution"; thus, OV 19 was properly scored.

Because I do not share Chief Justice Kelly's vision of criminal jurisprudence, I concur in this Court's order denying leave to appeal.

---

[2] *Post* at 3, quoting MCL 777.49(a).

[3] *Post* at 3.

[4] *Post* at 3.

[5] *Post* at 5.

[6] *Post* at 3 (emphasis added).

CORRIGAN, J., joins the statement of YOUNG, J.

KELLY, C.J. (*dissenting*).

I would grant leave to appeal to consider the scoring of offense variable (OV) 19. Defendant was brought to the police station as part of a police ruse. The officers told defendant that he could recover some money that had been seized during a traffic stop if he came to the station. When he arrived, he was arrested and sent to the jail for booking. During a strip search at the jail, officers found 47 grams of crack cocaine and numerous packets of heroin in his underwear.

Clearly, defendant should not have been in possession of illegal drugs and should not have taken them to the police station. But his purpose in going there was not to deal drugs. He could hardly be said to have intended to engage in conduct that "threatened the security of a penal institution."[7] If his behavior can be said to have been a threat, regardless of defendant's intent, it must be conceded that the threat existed only because of a police subterfuge.[8] I believe this crucial fact could make defendant's conduct an insufficient basis for the scoring of OV 19 here.

Justice Young observes that defendant could have avoided having his sentence increased by telling the officers that he carried prohibited substances on his person when he was arrested at the station. He points out that it was defendant's choice to bring the drugs into the county jail. However, defendant chose not to reveal the drugs, presumably because he wished not to be charged for possession with intent to deliver prohibited substances in addition to his other crimes. It seems unlikely that he chose to conceal the drugs because he intended to "threaten the security of a penal institution."

I believe that scoring points for OV 19 may require that a defendant intend to threaten the security of a penal institution. Caselaw from our sister states supports the conclusion that intent is necessary for a defendant to be liable for conduct of this sort.[9] Courts in some other jurisdictions have come to contrary conclusions.[10] Moreover, this

---

[7] MCL 777.49(a).

[8] In his concurring statement, Justice Young agrees that the police conduct in this case was a "ruse" to get defendant to the police station.

[9] *State v Cole*, 142 NM 325 (2007); *State v Sowry*, 155 Ohio App 3d 742 (2004); *State v Tippetts*, 180 Or App 350 (2002).

[10] *State v Carr*, 2008 WL 4368240 * 5 (Tenn Crim App, 2008); *State v Winsor*, 110 SW3d 882, 886-888 (Mo App, 2003); *Brown v State*, 89 SW3d 630, 633 (Tex Crim App, 2002); *State v Canas*, 597 NW2d 488, 496-497 (Iowa, 1999), abrogated in part on other grounds by *State v Turner*, 630 NW2d 601, 606 n 2 (Iowa, 2001).

issue is currently before the supreme courts of Washington and California.[11]  Clearly, the issue is of jurisprudential significance and this Court should not summarily dismiss it.

Courts in other jurisdictions have disagreed over whether a defendant's culpability is affected by the defendant's failure to reveal the existence of contraband on his or her person before booking.[12]  This was the basis for the trial court's scoring of OV 19 and is the key argument advanced by Justice Young's concurrence.  My conclusion that further review of this issue is warranted is supported by these varying outcomes under similar circumstances.

The Washington Court of Appeals recently addressed this issue in the same sentencing enhancement context at issue in this case.  In *State v Eaton*,[13] the defendant was arrested for driving while under the influence (DUI) and transported to the county jail.  During a search of his person, an officer discovered methamphetamine.  Defendant was charged with one count of DUI and one count of possession of a controlled substance.  The state sought a sentencing enhancement under RCW 9.94A.533(5)(c), which allows a court to add 12 months to a defendant's sentence if the offense was committed "while in a county jail or state correctional facility."  Although defendant objected to the sentencing enhancement, the trial court increased defendant's sentence from 0 to 6 months to 12 to 18 months.

The Washington Court of Appeals reversed.  The Court first noted that "this sentence enhancement is not a separate sentence or a separate substantive crime. . . . Rather, it presupposes that the defendant's behavior already constitutes a crime, such as

---

[11] *State v Eaton*, 143 Wash App 155 (2008), review granted 164 Wash 2d 1013 (2008); *People v Gastello*, 57 Cal Rptr 3d 293 (2007), review granted and opinion superseded by *People v Gastello*, 61 Cal Rptr 3d 1 (2007).

[12] Compare *Cole*, *supra* at 328 ("It is of no moment . . . that Defendant could have avoided the charge of bringing contraband into a jail by admitting to the booking officer that he possessed marijuana.  The dispositive issue is that Defendant cannot be held liable for bringing contraband into a jail when he did not do so voluntarily.") with *Canas*, *supra* at 496 (upholding defendant's conviction after noting that the defendant "had the option of disclosing the presence of the drugs concealed on his person before he entered the jail and became guilty of the additional offense of introducing controlled substances into a detention facility").

[13] *State v Eaton*, *supra*.

possession of a controlled substance."[14] Nevertheless, the court ultimately determined that the legislature "did not intend the unlikely, absurd, or strained consequence of punishing a defendant for his *involuntary* act."[15]

The argument accepted by the court in *Eaton* is even more persuasive in the context of OV 19. Many of the statutes in *Eaton* and the other cited cases explicitly did *not* contain an intent requirement. The courts reversed the convictions because they considered the requirement that conduct be volitional as part of the *actus reus* of the crime. Even if one rejects that argument, here OV 19 arguably does include an intent requirement because of the Legislature's use of the word "threatened." Black's Law Dictionary's definition of "threat" includes the element of the *intention* to cause loss or harm to something.[16] In my mind, the use of this language makes defendant's argument more persuasive and worthy of further review. I would have no difficulty with the scoring of OV 19 in this case if the OV provided extra points for trying to avoid having drugs being detected during a booking, or, as Justice Young suggests, simply for "stupidity." But it does neither. I think the assessment of 25 points here may have lengthened defendant's sentence for conduct not covered by OV 19.[17]

Hence, I would grant leave to appeal to consider the scoring of OV 19.

---

[14] *Eaton*, *supra* at 160.

[15] *Id.* at 164. In reaching this conclusion, the court observed that even with crimes and sentence enhancements with no *mens rea* requirement "[t]here is a certain minimal mental element required in order to establish the actus reus itself. *This is the element of volition.*" *Id.* at 160 (quoting *State v Utter*, 4 Wash App 137 [1971]). Requiring a voluntary action to impose criminal liability finds support in LaFave, Substantive Criminal Law, § 6.1(c), pp 425-426 (2d ed).

[16] Black's Law Dictionary (8th ed) defines "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property . . . ."

[17] It seems I should be entitled to this and similar conclusions without being accused of holding "an unusual perspective of criminal law and criminality in general," especially given the divergent outcomes on the issue in other states.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 12, 2009

d0609

Clerk