# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v DIXON

Docket No. 162221. Argued on application for leave to appeal December 9, 2021. Decided April 28, 2022.

Hamin L. Dixon pleaded guilty in the Chippewa Circuit Court to attempted possession of a cell phone, MCL 800.283a. Defendant was serving a sentence at a state correctional facility when prison staff found him in a bathroom stall near a cell phone. A cell phone charger was later found during a search of defendant's shared prison cell. Defendant was charged with possession of a cell phone in a prison and pleaded guilty to attempted possession in exchange for dismissal of the possession charge and withdrawal of the prosecution's request for habitual-offender sentencing. The trial court assessed 25 points under Offense Variable (OV) 19, MCL 777.49(a), for conduct that threatened the security of a penal institution. The court sentenced defendant to 11 to 30 months in prison. Defendant later moved to correct an invalid sentence, arguing that the court should have assessed zero points under OV 19 because there was no evidence that his conduct had threatened the security of the prison. The court denied the motion, concluding that there was no set of circumstances under which possession of a cell phone would not threaten the security of a prison. The Court of Appeals, REDFORD, P.J., and BECKERING and M. J. KELLY, JJ., affirmed, reasoning that, like possession of drugs in a prison, possession of a cell phone in a prison is inherently dangerous. 333 Mich App 566 (2020). Defendant sought leave to appeal in the Supreme Court, and in lieu of granting leave to appeal, the Court ordered oral argument on the application. 507 Mich 924 (2021).

In an opinion by Chief Justice MCCORMACK, joined by Justices CLEMENT, CAVANAGH, and WELCH, the Supreme Court *held*:

Possession of a cell phone by a prisoner justifies a 25-point score for OV 19 only if facts establish that the defendant's conduct actually threatened the security of the prison.

1. A 25-point score for OV 19 requires the trial court to find by a preponderance of the evidence that the defendant, by their conduct, threatened the security of a penal institution. Two factual findings are necessary to satisfy this standard: (1) that the defendant engaged in some conduct that (2) threatened the security of the prison. The Court of Appeals did not address the lack of any evidence of "conduct" by defendant, other than being near the cell phone when it was found, that threatened the security of the prison. Relying on *People v Dickinson*, 321 Mich App 1

(2017), the Court of Appeals apparently found that possession alone was sufficient conduct to warrant a score of 25 points for OV 19. However, *Dickinson* was distinguishable and unhelpful because the defendant in that case brought heroin into a prison while visiting an inmate. Therefore, the defendant's conduct was smuggling, in addition to possession. Smuggling a controlled substance into a penal institution is a crime, which justified the assessment of 25 points for OV 19; i.e., because the defendant's conduct was illegal, it threatened the security of the penal institution. *People v Carpenter*, 322 Mich App 523 (2018), was also distinguishable. The *Carpenter* panel upheld the defendant's 25-point score for OV 19 because the defendant had threatened the security of the jail where he was an inmate by attempting to smuggle controlled substances into the jail and by attacking an inmate he believed had informed jail authorities of his plan. In addition to the threat posed by smuggling, the *Carpenter* panel reasoned that the retaliatory assault was an additional threat to security, in part because it had the potential to discourage other inmates from reporting security breaches they might witness. Both *Dickinson* and *Carpenter* focused on the defendants' conduct beyond the drug possession, including smuggling and assault, to justify the assessment of 25 points for OV 19. There was no similar evidence of conduct beyond the cell phone possession in this case. Possession alone, even constructive possession, might be conduct that threatens the security of a penal institution, depending on the item possessed. For example, someone who was not authorized to possess a gun in a prison, but was found in possession of one, would threaten the security of the prison through possession alone. But determining whether possession of a cell phone threatens the security of a prison requires an assessment of the accused's conduct beyond the possession itself because, unlike a gun, a cell phone has many nonthreatening uses. Because the only evidence in this case was that defendant was near a cell phone, there was no support for the trial court's finding that defendant engaged in conduct that threatened the security of the prison.

2. The Court of Appeals panel relied on the holding in *Dickinson* that controlled substances posed a threat because controlled substances were inherently dangerous. The Court of Appeals in this case saw cell phones the same way and was persuaded that because the Legislature made possessing a cell phone in prison a crime, that act is necessarily a threat to the security of a penal institution. According to this view, the specific facts of the possession are not relevant. But the statute does not support the Court of Appeal's textual shortcut. MCL 800.285(1) provides only a maximum sentence for someone who violates it and does not address minimum or appropriate sentencing. Offense variables are intended to generate a sentencing range that reflects the particular facts of each case. If OV 19 instructed the court to assess 25 points for possession of a cell phone in prison, then the position of the Court of Appeals would be persuasive. But OV 19 requires the court to find that the defendant's conduct threatened the security of the prison. Although some cell phone possession by prisoners meets that standard, not all of it does. Because the sentencing court found no facts beyond constructive possession, there was no evidence that defendant's conduct threatened the security of the prison, so OV 19 was improperly scored.

Reversed and remanded.

Justice VIVIANO, joined by Justice ZAHRA, dissenting, opined that common sense and the overwhelming consensus of legal authorities indicated that prisoners in possession of cell phones pose an obvious danger to prison staff and other inmates, regardless of whether the phone has been used or is being used to commit a new crime at the moment of discovery. Justice VIVIANO noted

that the Legislature clearly indicated that cell phones threaten the security of penal institutions by enacting MCL 800.283a, and numerous decisions from other jurisdictions have explained the dangers of cell phones in prison. Additionally, media reports and data indicate that cell phones pose significant risks in prisons and have been used by prisoners to conduct criminal activity and foment discord within prisons. The majority tried to avoid this conclusion, that cell phones pose a severe risk to prison security by enabling harmful conduct, by artificially dividing the statute into two parts. First, the majority determined that mere possession of a cell phone is insufficient to constitute conduct, without defining "conduct." In a criminal setting, "conduct" refers to particular acts that have been proscribed, and the conduct proscribed by the statute at issue is possession. Therefore, according to Justice VIVIANO, there was no serious debate that defendant was engaged in "conduct" in this case, even if he only possessed or attempted to possess the cell phone. Second, the majority suggested that there must be particular facts that establish a threat in order to satisfy the requirements of the statute. To "threaten" means to be a source of danger or menace to something. The risk of danger need not materialize in order for conduct to be threatening. Therefore, whether defendant had or had not used the cell phone in a dangerous manner was irrelevant because the risk itself constituted the threat. Similarly, whether cell phones were inherently dangerous was irrelevant. OV 19 is not limited to items that are dangerous in every context, but rather requires consideration of whether the item is dangerous when possessed by an inmate in a prison. Because possession of a cell phone by a prisoner endangered the safety of the prison, Justice VIVIANO would have affirmed the judgment of the Court of Appeals.

Justice BERNSTEIN, dissenting, agreed that simple possession of a cell phone may not be enough to assess 25 points for OV 19, but disagreed with the majority's analysis of the statute as imposing two independent requirements: (1) an offender must engage in some conduct that threatens the security of the prison, and (2) that conduct threatens the security of the prison. According to Justice BERNSTEIN, it was not clear that these were independent requirements, especially given that the majority acknowledged that mere possession is conduct. Moreover, the majority's analysis collapsed into the second requirement when it concluded simply that mere possession cannot be sufficient conduct to score 25 points under MCL 777.49(a) because a cell phone can be used in a nonthreatening manner. Justice BERNSTEIN noted that although the majority distinguished *Dickinson* and *Carpenter* under the conduct requirement, the majority did not explain why the Court of Appeals panel erred by relying on these two cases under the threat requirement. Justice BERNSTEIN suggested that scoring points for OV 19 might require a finding that a defendant intended to threaten the security of a penal institution and that interpreting "threatened" to include an element of intent would have the benefit of being grounded in the text of the statute and would require a showing of more than mere possession. Further, Justice BERNSTEIN opined that assessing intent for a prisoner's possession of any sort of contraband would be a simpler test to employ than determining an item's inherent dangerousness.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED April 28, 2022

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 162221

HAMIN LORENZO DIXON,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MCCORMACK, C.J.

Hamin Lorenzo Dixon pled guilty to attempted possession of a cell phone in prison in violation of MCL 800.283a. At sentencing, the trial court assigned Dixon 25 points under Offense Variable (OV) 19 for "conduct threaten[ing] the security of a penal institution . . . ." MCL 777.49(a). The court cited the inherent dangerousness of possessing a cell phone in prison to support this score, and the Court of Appeals agreed. That is, the court assessed 25 points for the very conduct that made Dixon guilty of the

offense—possessing the phone—and only that conduct.  It did not find any additional facts to support the point assessment.

We find possession alone was not enough in this case.  Some prison cell phone possession will be conduct that threatens the security of the prison and some won't; the facts of the possession matter.  Because the trial court did not rely on any facts beyond Dixon's possession and nothing about that was inherently threatening, we reverse the Court of Appeals and remand for resentencing.

## I.  FACTS AND PROCEDURAL HISTORY

Dixon was serving a sentence at Kinross Correctional Facility when prison staff found him in a bathroom stall with a cell phone nearby.  A later search of his shared prison cell revealed a cell phone charger.  Dixon was charged with possession of the phone in a prison in violation of MCL 800.283a.  He pled guilty to attempted possession in exchange for the prosecution's dismissing the possession charge and withdrawing a request for habitual-offender sentencing.

The probation department's Presentence Investigation Report proposed an assessment of 25 points under OV 19, making the recommended guidelines range for the defendant's minimum sentence 5 to 17 months.  A 25-point score is assessed under OV 19 when the court finds that "[t]he offender by his or her conduct threatened the security of a penal institution . . . ."  MCL 777.49(a).  Had Dixon received zero points under OV 19, his recommended minimum sentence guidelines range would have been 0 to 17 months.

The court sentenced Dixon to a minimum term of 11 months in prison and a maximum term of 30 months in prison.  After sentencing, Dixon moved to correct an

2

invalid sentence, arguing that he should have received zero points under OV 19. He argued that there was no evidence that he had used the cell phone to threaten the security of the prison—in fact, no evidence showed that he had used the cell phone or even that it worked. The court denied the motion, reasoning that cell phones are inherently dangerous. That is, the court believed that there is no set of circumstances in which possessing a cell phone wouldn't threaten the safety of the prison, as would possession of a weapon. Under the court's reasoning, every possession of a cell phone in prison—even one that's inoperative—requires a 25-point score under OV 19.

Dixon appealed, and the Court of Appeals affirmed. *People v Dixon*, 333 Mich App 566; 963 NW2d 378 (2020). In upholding the 25-point score, the Court analogized possession of a cell phone in prison to possession of drugs in prison, citing its decision in *People v Dickinson*, 321 Mich App 1; 909 NW2d 24 (2017). In *Dickinson*, a prison visitor tried to smuggle heroin into the facility and was convicted of furnishing a controlled substance to a prisoner, MCL 800.281(1), among other offenses. *Id*. at 4-6. The Court of Appeals held in *Dickinson* that smuggling a controlled substance into prison justified a 25-point score for OV 19 because it inherently threatens the security of the institution. *Dixon*, 333 Mich App at 573, citing *Dickinson*, 321 Mich App at 23-24. Just like heroin, the *Dixon* panel reasoned, cell phones are inherently dangerous because of the "numerous ways in which a prisoner may use such a device for illicit purposes . . . ." *Dixon*, 333 Mich App at 573. And, just as the Legislature criminalized the possession of drugs in prison, it criminalized cell phone possession too, "indicat[ing] that prisoners shall not have cell phones within a penal institution because of the inherent dangers posed by [their] presence . . . ." *Id*. Like the trial court, the Court of Appeals concluded that every

3

possession—and attempted possession—of a cell phone warrants a 25-point score under OV 19.

Dixon sought leave to appeal in our Court. We ordered oral argument on the application to address whether an attempted violation of MCL 800.283a necessarily requires a score of 25 points for OV 19 and, if not, whether there is sufficient evidence to score OV 19 at 25 points in this case. *People v Dixon*, 507 Mich 924 (2021).

## II. ANALYSIS

We review a trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation" that we review de novo. *Id*. When the guidelines range is incorrectly calculated and that error alters the range, a defendant is entitled to resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

The purpose of OVs is to tailor a recommended sentence to a particular case. See *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015) (crediting our sentencing scheme with " 'helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary' "), quoting *United States v Booker*, 543 US 220, 264-265; 125 S Ct 738; 160 L Ed 2d 621 (2005). The OVs are a procedural mechanism for courts to individualize sentencing to the offense and the offender. A 25-point score under OV 19 requires the trial court to find by a preponderance of the evidence that the defendant "by his or her conduct threatened the security of a penal institution or court." MCL 777.49; *Hardy*, 494 Mich at 438 ("Under the sentencing

4

guidelines, the circuit court's factual determinations . . . must be supported by a preponderance of the evidence.").

To satisfy this standard, a court must find (1) that the defendant engaged in some conduct and (2) that conduct threatened the security of the prison. The facts showed Dixon was in a bathroom stall near a cell phone and that there was a charger in his shared cell. No evidence showed that he used the phone, was planning to use it, or even held it. In fact, no facts showed that the phone was operable.

## A. POSSESSION AS CONDUCT

The Court of Appeals did not specifically address OV 19's "conduct" requirement or whether Dixon's constructive possession satisfied it. Instead, relying on *People v Dickinson*, which upheld a 25-point OV 19 score for drug smuggling in penal institutions, the panel reasoned that the possession of a cell phone is inherently threatening to the security of the prison. It seems the panel believed that the constructive possession alone was sufficient conduct.

But we find *Dickinson* distinguishable and unhelpful. In *Dickinson*, the defendant was visiting an inmate at Lakeside Correctional Facility when a sergeant observed her hand the inmate a concealed object: a small balloon filled with heroin. *Dickinson*, 321 Mich App at 5-6. The Court of Appeals held that 25 points were properly assessed for OV 19 because "[b]ringing a controlled substance like heroin into a prison and delivering it to a prisoner . . . inherently puts the security of the penal institution at risk." *Id*. at 23. The defendant's *conduct* was not the possession alone, but the smuggling of the illegal substance into the prison. The panel was also convinced that the assessment was justified

5

since smuggling controlled substances into penal institutions is a crime. That fact too was evidence of "the seriousness of the problem" of delivering "an unquestionably dangerous drug" into our prisons. *Id*. at 23-24. Put differently, since the conduct—drug smuggling and possession—was illegal, it threatened the security of the institution.

*People v Carpenter*, 322 Mich App 523; 912 NW2d 579 (2018), which Justice BERNSTEIN also finds persuasive, is also distinguishable and unhelpful. In that case, the defendant, who was in pretrial detention for several charges, tried to smuggle controlled substances into the jail and struck and injured another inmate whom he believed had informed jail authorities of his smuggling plan. *Id*. at 526-527. At the defendant's sentencing on the initial charges for which he had been detained, the trial court assessed 25 points for OV 19 on the basis of the smuggling and the assault. *Id*. at 527. The Court of Appeals upheld the defendant's OV 19 score because "by attempting to bring controlled substances into [the jail] and by attacking another inmate" the defendant threatened the security of the penal institution. *Id*. at 530. The panel reasoned that "[t]he smuggling of controlled substances into a jail" poses a threat "because of the dangers of controlled substances to the users and those around them." *Id*. at 531. The retaliatory assault was an additional threat to security because it had the potential to discourage other inmates "from coming forward about security breaches they might witness." *Id*.

Neither *Dickinson* nor *Carpenter* provide us any help in evaluating Dixon's conduct for OV 19. Both decisions focused on the defendants' conduct beyond the drug possession—drug smuggling and assault—to justify a 25-point score. The Court of Appeals did not address this important difference or explain why constructive possession alone was sufficient; nor does Justice BERNSTEIN.

6

To be sure, we agree with Justice VIVIANO that possession alone, even constructive possession, could be "conduct" for purposes of scoring OV 19. And possession might be "conduct [that] threaten[s] the security of a penal institution" depending on the item possessed. Someone not authorized to possess a weapon in a prison who possesses a gun would threaten the security of the prison by that possession alone. But a cell phone is not a gun, and determining whether cell phone possession threatens the security of a prison requires assessment of the accused's conduct beyond the possession itself. That is, unlike possession of a weapon, the nature of the cell phone possession is important to determining whether it "threatened the security of a penal institution" because cell phones have many nonthreatening uses. Here, where the only evidence was that Dixon was near a cell phone, there is no support for the trial court's finding that Dixon engaged in conduct that threatened the security of the prison.

## B. CELL PHONES AS A THREAT

The Court of Appeals also relied on the *Dickinson* panel's reasoning in analyzing whether the defendant's conduct threatened the penal institution. The *Dickinson* panel held that smuggling controlled substances is inherently dangerous in penal institutions. The *Dickinson* panel was specifically persuaded by the fact that smuggling drugs into prison is a crime—criminal activity in a prison is threatening to the prison.

The Court of Appeals saw cell phones the same way. The panel was persuaded that because possessing a cell phone in a prison is a crime, that act necessarily threatens the security of the prison. The specific facts about the possession aren't relevant—proof of the crime is also proof sufficient to support a score of 25 points for OV 19.

7

But we don't see a textual basis for the panel's shortcut. Dixon's crime is the reason he was being sentenced. But the statute creating the criminal offense Dixon pled guilty to provides only a maximum sentence for someone who violates it. See MCL 800.285(1). It doesn't direct a minimum sentence or an appropriate sentence. That's where OVs come in; OVs generate a sentencing range meant to reflect the particular facts of the case. Each OV represents a factor that the Legislature believes is relevant to determining an appropriate sentence in a specific case.

If OV 19 instructed a court to assess 25 points for possessing a cell phone in a prison, or for committing a crime in a prison, then we would agree with the Court of Appeals. But OV 19 requires that the court find that the defendant's "conduct threatened the security of [the prison]." Some prisoner cell phone possession surely meets that standard. Not all does.

Justice VIVIANO lists numerous ways a cell phone can be used for illicit, threatening purposes. We agree with his list; cell phones can be used in threatening ways, particularly in prisons. But if a 25-point score is warranted under OV 19 for mere possession of any object that hypothetically could pose a threat with some creativity, the OV becomes boundless. We agree with Justice VIVIANO that "[c]ontext is thus critical."

Here, that context is that no facts showed that Dixon used the phone or that it was operational. Because the court found no facts beyond the constructive possession, there was no evidence that Dixon's conduct threatened the security of the prison. As a result, OV 19 was improperly scored.

8

### III.  CONCLUSION

Possessing a cell phone in prison might justify a 25-point score for OV 19 because it threatens the security of the prison, but only if facts establish that the defendant's conduct, in fact, threatened the security of the institution.  A hypothetical threat isn't enough.  Because no such facts were presented to establish that Dixon's possession threatened the prison, the court should not have assessed 25 points under OV 19.  We reverse the opinion of the Court of Appeals and remand to the trial court for resentencing consistent with this opinion.

Bridget M. McCormack
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                                 No. 162221

HAMIN LORENZO DIXON,

      Defendant-Appellant.

_____

VIVIANO, J. (*dissenting*).

The majority today holds that prisoners who secretly possess cell phones inside of a prison do not "threaten[] the security of a penal institution." MCL 777.49(a). That conclusion is puzzling. The plain language of Offense Variable (OV) 19 encompasses conduct that poses a risk to the safety of a penal institution without requiring more. Common sense and the overwhelming consensus of legal authorities tell us that prisoners who possess cell phones within the prison walls pose an obvious danger to prison staff and other prisoners, whether or not the phone has been used or is being used at the precise moment of discovery to commit a new crime. For these reasons, I respectfully dissent.

Defendant has a lengthy criminal history which includes a number of crimes committed while he was incarcerated, such as attempted murder, witness intimidation, and felonious assault. While serving time for these crimes, defendant committed the instant offense. In 2016, prison staff discovered defendant in a bathroom with a cell phone in his possession. The cell phone was confiscated, and a subsequent search of defendant's prison cell revealed a cell phone charger. Defendant was charged as a fourth-offense habitual

offender with being a prisoner in possession of a cell phone under MCL 800.283a(2), a public-safety offense.

Defendant pleaded guilty to attempted possession of a cell phone in exchange for the dismissal of the possession charge and the habitual-offender enhancement. At sentencing, defendant did not object to the court's assessment of 25 points for OV 19 for conduct threatening the security of a penal institution. Indeed, his counsel stated, "I believe the scoring to be accurate."[1] However, defendant later moved to correct an invalid sentence, arguing that OV 19 was incorrectly scored. The trial court denied defendant's motion, and the Court of Appeals affirmed in a published opinion, holding that it is "axiomatic that a prisoner's possession of contraband like a cell phone threatens the safety and security of the prison staff and prisoners . . . ." *People v Dixon*, 333 Mich App 566, 573; 963 NW 2d 378 (2020). Defendant has appealed here, objecting to the scoring of OV 19.

MCL 777.49(a) provides that OV 19 is properly scored at 25 points when "[t]he offender by his or her conduct threatened the security of a penal institution." The question in this case is whether defendant's possession of a cell phone is conduct that threatened the security of a penal institution. That question is easily answered by referring to the record in this case, our state's laws, numerous precedents, and common sense. The presentence investigation report—prepared by the Michigan Department of Corrections, the very

---

[1] Arguably, this concession waives any challenge defendant could bring to the scoring. Nevertheless, the prosecutor has not argued waiver, and the majority has reached the merits. I will therefore address the alleged error.

agency responsible for administering the state's prisons—lists the numerous ways a cell phone may be used by a prisoner for illicit purposes:

> The possession and use of a device that has cellular telephone capabilities within the secure perimeter of a correctional facility puts both staff and inmates' lives in jeopardy. An inmate's ability to engage freely in unmonitored conversations with outside entities puts correctional administrators at a serious disadvantage with regard to institutional safety and security. Matters such as escape, assault (both staff and prisoner) and introduction of contraband may be freely discussed by a prisoner possessing and utilizing an unauthorized cellular telephone.

The Legislature certainly thought that cell phones in prisons were dangerous. That is why it criminalized prisoner possession of cell phones in 2012, imposing a penalty of up to five years' imprisonment and a $1,000 fine. 2012 PA 255, amending MCL 800.283a; see also MCL 800.285.[2] Another Michigan statute demonstrates the link between prison telephone communications and prison security. MCL 791.270(1)(b) permits monitoring of prisoner telephone calls on the Prisoner Telephone System if, among other things, "[t]he monitoring is routinely conducted for the purpose of preserving the security and orderly management of the correctional facility . . . ." Cell phone communications are even more dangerous because they cannot be monitored in this fashion.

In addition, numerous decisions from other courts, addressing a variety of issues, have explained the dangers of cell phones in prisons. Congress has deemed prisoner possession of cell phones to be a crime punishable by imprisonment. 18 USC 1791. In a case predating that provision, the United States Court of Appeals for the Third Circuit

---

[2] This conclusion finds support from *People v Dickinson*, 321 Mich App 1, 24; 909 NW2d 24 (2017), which similarly noted that the criminalization of controlled substances in prison was evidence of the substances' dangerousness to the penal institution.

examined whether a predecessor statute applied to such possession. *United States v Blake*, 288 F Appx 791 (CA 3, 2008). The prisoner-defendant in that case was found with a cell phone and charger and was convicted under 18 USC 1791(d)(1)(F), which, when *Blake* was decided, banned "any other object that threatens the order, discipline, or security of a prison, or the life, health, or safety of an individual." PL 99-646, § 52; 100 Stat 3592. The defendant argued that this catchall provision was void for vagueness. *Blake*, 288 F Appx at 793.

The court had no problem rejecting this argument: "Given the unique prison context in which the statute is applied, the ordinary person would know that possessing a cell phone and a charger in prison 'threatens the order, discipline, or security' of that institution." *Id*. at 793-794. "To begin with," the court noted, "the risks presented when inmates possess cell phones and cell phone chargers are patent." *Id*. at 794. Testimony at trial from a prison official noted that cell phones could be used to intimidate witnesses or arrange for harassment of prison employees on the outside; charger cords could be used for strangulation or suicide. *Id*. But the court did not rely only on the trial testimony, noting in addition that "during the last several years, media outlets have documented the growing problem of, and dangers associated with, prisoners possessing cell phones." *Id*. (collecting sources). The court concluded, "That cell phones can, and have been, used for various dangerous and unlawful purposes in the prison context is, thus, quite clear." *Id*. at 795. Accordingly, the court rejected the void-for-vagueness argument.[3]

---

[3] See also *Robinson v Warden*, 250 F Appx 462, 464 (CA 3, 2007) (reaching the same conclusions as *Blake*); cf. *People v Green*, 32 Misc 3d 447, 454-455; 927 NYS2d 296 (NY Co Ct, 2011) (holding "that as a matter of law a cell phone, no matter how a defendant may

For similar reasons, other courts have upheld the application to cell phones of the Federal Bureau of Prisons' regulation prohibiting hazardous tools. Through 2010, that regulation did not expressly prohibit possession of cell phones in prison; instead, it prohibited "[p]ossession, manufacture, or introduction of a hazardous tool . . . ." 28 CFR 541.13 (2010).[4] The United States Court of Appeals for the Fifth Circuit upheld a disciplinary action under the regulation that was imposed for a prisoner's possession of a cell phone. *Evans v Martin*, 496 F Appx 442, 444 (CA 5, 2012). The court noted that other courts had rejected the argument, raised by the defendant in *Evans*, that the regulation did not give fair notice that a cell phone is a hazardous tool. *Id*. at 445 (collecting cases). Agreeing with this conclusion, the court in *Evans* stated that "[g]iven the context in which inmates are provided telephone access and the important goal of maintaining institutional order, it is clear that an unauthorized cell phone falls within the definition of a hazardous tool because a cell phone can be used to plan an escape or to undermine safety and security." *Id*.; see also *id*. at 445-446 (noting that access to cell phones would "allow

use it, is inherently *dangerous* because a cell phone or other telecommunication device has a substantial probability that the item itself may be used in a manner that is likely to bring out major threats to a detention facility's institutional safety or security by the defendant, or other inmates, in the facility"); but see *United States v Beason*, 523 F Appx 932, 935 (CA 4, 2013) (reaching a conclusion contrary to *Blake*, but largely on the basis that cell phones were unlike the other items enumerated in the statute, including weapons, intoxicating substances, and cash).

[4] Hazardous tools were defined as "[t]ools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade." 28 CFR 541.13 (2010). The rule was subsequently amended to include "portable telephone[s]." See 28 CFR 541.3 (2021).

5

inmates to prepare escape plans, procure contraband, and conspire to harm others—including both security personnel and fellow inmates"). It would therefore be clear to an inmate that a cell phone was a hazardous tool. *Id*. at 446.

The dangers discussed in these cases have been demonstrated numerous times. A Senate Fiscal Agency legislative analysis noted the serious problems cell phones had caused in Michigan prisons. See Senate Legislative Analysis, SBs 551 and 552 (June 27, 2012).[5] Other states and countries have seen prisoners use cell phones to conduct criminal activity and foment discord within prisons.[6] The media sources cited in *Blake* similarly demonstrate that cell phones pose significant risks in prison. *Blake*, 288 F Appx at 794-795. And the problem is widespread, as cell phones pervade the prison system. Skarbek, *The Social Order of the Underworld: How Prison Gangs Govern the American Penal System* (New York: Oxford University Press, 2014), p 22 (noting the high number of seizures of phones in California and calculating the likely high number of cell phones in prisons).

---

[5] I am not, of course, using this document to help interpret the text of the statute; rather, I am consulting it for the factual information it contains about the dangers of cell phones in prisons.

[6] See Christie, *Disconnected: The Safe Prisons Communications Act Fails to Address Prison Communications*, 51 Jurimetrics J 17, 32 (2010) (noting examples); Burke & Owen, *Cell Phones as Prison Contraband*, 79 FBI Law 10 Enforcement Bulletin (July 1, 2010) <https://leb.fbi.gov/articles/featured-articles/cell-phones-as-prison-contraband> (same) [https://perma.cc/W392-H77A]. Just a few years ago, a drone successfully dropped marijuana and cell phones to prisoners in a Michigan prison. Gerstein, *Drone Sneaks Package into Michigan Prison*, The Detroit News (October 1, 2017) <https://www.detroitnews.com/story/news/local/michigan/2017/10/01/ report-drone-sneaks-contraband-prison/106224348/> [https://perma.cc/9Z55-7ENR] (noting the successful delivery by drone of marijuana and cell phones to inmates).

These sources confirm what common sense tells us. Cell phones in a prison pose a severe risk to prison security because they enable so much harmful conduct. Escapes can be planned and attacks on guards arranged. Cell phones can also facilitate deadly prison riots. Kinnard, *Governor Takes 'Emergency' Action After Deadly Prison Riots*, Associated Press (April 23, 2018) (discussing a deadly riot in South Carolina that was attributed to cell phones and also noting comments of the Director of Corrections that "cellphones . . . represent his No. 1 security threat behind bars").[7] Moreover, even as purely physical items, phones could pose risks. Just as a charger cord could be used to strangle someone, see *Blake*, 288 F Appx at 794, a cell phone might be shattered in such a way as to produce sharp shards that could be used as weapons.

The majority tries to avoid the obvious common-sense conclusion that prisoners with cell phones are a source of danger by artificially dividing the statute into two parts. First, the majority appears to conclude that mere possession of a cell phone is insufficient to constitute conduct. The analysis is hard to follow. The majority nowhere defines the term "conduct" but instead begins its analysis by distinguishing the cases the Court of Appeals relied on because those cases involved conduct in addition to possession. Perhaps

---

[7] Available at <https://apnews.com/article/c88dad65fed54af082e047f90ed28eal> (accessed April 4, 2022).

those cases are distinguishable with regard to the conduct at issue.[8] But this does not tell us much about whether possession of a phone constitutes "conduct."[9]

In the criminal setting, "conduct" refers to particular acts that have been proscribed. " '[T]he substantive criminal law is that law which . . . declares what *conduct* is criminal and prescribes the punishment to be imposed for such conduct.' " *People v Arnold*, 508 Mich 1, 19; ___NW2d___ (2021) (emphasis added), quoting 1 LaFave, Substantive Criminal Law (3d ed), § 1.2, p 11.[10] In the present case, as in many others, the proscribed conduct is possession. MCL 800.283a(2); see also *People v Gray*, 297 Mich App 22, 32; 824 NW2d 313 (2012) ("The 'conduct' relating to defendant's sentence for possession of cocaine with intent to deliver concerned defendant's possession of less than 50 grams of

---

[8] In *Dickinson*, 321 Mich App at 5-6, 23-24, the defendant was not a prisoner in possession of drugs; rather, she brought heroin to a prisoner she was visiting. Thus, the pertinent "conduct" was the smuggling of drugs. In the other case, *People v Carpenter*, 322 Mich App 523; 912 NW2d 579 (2018), although the defendant was a prisoner, the relevant conduct was his attempted smuggling of drugs into a jail and his assault on a fellow inmate.

[9] The majority also seems to discount the conduct of possessing the cell phone *because* that conduct was involved in the underlying criminal offense. But "absent an express prohibition, courts may consider conduct inherent in a crime when scoring offense variables." *People v Hardy*, 494 Mich 430, 442; 835 NW2d 340 (2013). There is no express prohibition here. Therefore, while the majority might be concerned that OV 19 will always be scored at 25 points when the defendant is convicted under MCL 800.283a— because the underlying criminal conduct also satisfies the variable's requirements—that result is a function of the text of OV 19.

[10] This generally aligns with the dictionary definition of "conduct." At the time MCL 777.49 was passed, the relevant lay definition of "conduct" was "personal behavior; way of acting; deportment." *Webster's American Dictionary: College Edition* (2000). See also *The American Heritage College Dictionary* (2004) ("The way a person acts, esp. morally or ethically."); *Webster's New World College Dictionary* (1996) ("[T]he way that one acts; behavior; deportment"). These definitions refer to an individual's behavior.

cocaine . . . ."). Therefore, there can be no serious debate that defendant was engaged in conduct here, even if he only possessed or attempted to possess the cell phone.[11]

The majority does not take on this conclusion directly. Instead, it says that possession of a cell phone is insufficient under the conduct requirement "because cell phones have many nonthreatening uses." *Ante* at 7. This is confusing. How does the threatening or nonthreatening nature of cell phone possession relate to whether that possession is conduct in the first place? I cannot see how it does. This seems to be, instead, an analysis of the threat requirement.

On that point—the second piece of the analysis—the majority also misreads the statute. The majority suggests that there must be particular facts showing a threat. Not all cases in which a prisoner possesses a cell phone will be threatening, according to the majority. Here, for example, there is no evidence that defendant used the phone or that the phone even worked. He was simply found near it. But nowhere does the majority attempt to define the key term. To "threaten" is "to be a source of danger" or "menace" to something; here, a penal institution. *The American Heritage College Dictionary* (2004). The risk of danger need not materialize for conduct to be threatening. Rather, it is the risk

---

[11] It is true that defendant pleaded guilty to *attempted* possession. The majority does not address any distinction between possession and attempted possession of a cell phone. But that distinction might be important under the majority's strained reasoning. An attempt to possess a cell phone would necessarily involve some conduct aimed at bringing the cell phone into one's possession. Arranging to possess contraband in the prison sounds a lot like smuggling. In any case, my analysis would be the same for attempted possession under the present facts, where defendant was discovered near the cell phone and the charger was found in his cell.

9

itself that constitutes the threat. Whether defendant had or had not yet used the cell phone in a dangerous manner is irrelevant.[12]

Moreover, the suggestion that a cell phone is not *inherently* dangerous is a red herring. We are not tasked with determining the Platonic ideal of cell phones, such that we must say whether they are dangerous in every context.[13] Rather, OV 19 requires consideration of whether the item is dangerous when possessed by an inmate in a prison. Context is thus critical. For example, when an audience member at a local theater production falsely yells "Fire!" and begins to run, that is conduct that threatens the security of the theater. When a cast member does it on stage, that is entertainment. Here, we are dealing only with threats to penal institutions. In that context, a cell phone obviously poses such a threat.

Of course, not all cell phone use by prisoners will necessarily result in harm to the institution. But that is not what OV 19 requires. Rather, to score 25 points for OV 19, the conduct must simply threaten the security of the penal institution. I would hold, in

---

[12] It would seem that the only use of the phone that would meet the majority's standard is one that actually brings about the dangers that the rule seeks to prohibit from even being risked, let alone actualized. For example, an escape must be arranged or a plan to harm a prison official made before a cell phone is considered dangerous. This view would essentially require the defendant to commit an additional crime before the court could find that the cell phone represents a danger. This ignores that OV 19 covers the mere *risk* of such events happening. Further, it is unclear why the operability of the cell phone matters. A nonfunctioning phone could nonetheless provoke fights among prisoners seeking to seize the phone, or it might be used as a weapon itself, or it might be repaired and made functional again.

[13] As the Court of Appeals has recognized, OV 19 is not limited to "weapons or other mechanical destructive devices" or other items that might appear to be dangerous in every context. *Dickinson*, 321 Mich App at 24.

accordance with common sense and the courts above, that the possession of a cell phone by a prisoner endangers the safety of a prison.[14]  For these reasons, I dissent and would affirm the judgment of the Court of Appeals.

David F. Viviano
Brian K. Zahra

---

[14] By reaching the opposite conclusion, the majority's decision lowers the minimum sentence guidelines range for this activity and lessens the deterrent effect of the crime at issue.  This, unfortunately, has the potential to make cell phone use in prisons even more pervasive and to make prisons less safe.

11

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                         No. 162221

HAMIN LORENZO DIXON,

      Defendant-Appellant.

_____

BERNSTEIN, J. (*dissenting*).

      I agree with the majority that simple possession of a cell phone may not be enough to assess 25 points under Offense Variable (OV) 19. However, I disagree with the majority's analysis and write separately to explain why.

      A 25-point score under OV 19 is appropriate when "[t]he offender by his or her conduct threatened the security of a penal institution . . . ." MCL 777.49(a). The majority reads the statute as imposing two requirements: first, the offender must engage in some *conduct* that threatens the security of the prison, and second, that conduct *threatens* the security of the prison. It is unclear how we are meant to parse these as independent requirements, especially given that the majority acknowledges that mere possession is conduct.[1] The majority simply concludes that mere possession cannot be sufficient "conduct" to score 25 points under MCL 777.49(a) because a cell phone can be used in a

_____

[1] In other words, if the conduct required by MCL 777.49(a) must be conduct that *threatens* the security of the prison, why isn't this requirement fully subsumed by the threat requirement?

nonthreatening manner; essentially, the majority's analysis collapses down into the second requirement.

As to the threat requirement, the majority states that the Court of Appeals panel engaged in a shortcut that ignores the text of the statute by relying on the fact that possessing a cell phone in prison is itself a crime. See MCL 800.283a(2). However, to the extent that the Court of Appeals panel engaged in such a shortcut, that is also true of the panels in *People v Dickinson*, 321 Mich App 1; 909 NW2d 24 (2017), and *People v Carpenter*, 322 Mich App 523; 912 NW2d 579 (2018). In both *Dickinson* and *Carpenter*, the Court of Appeals simply found that controlled substances are inherently dangerous. There was no analysis as to how mere possession "*threatened* the security of a penal institution." MCL 777.49(a) (emphasis added). Despite distinguishing these two cases under the conduct requirement, the majority does not explain why the Court of Appeals panel in this case erred in relying on these two cases under the threat requirement.

I see no meaningful difference between this case and *Dickinson* or *Carpenter*. The controlled substance at issue in *Dickinson* was heroin, and possession of heroin admittedly may seem more dangerous than possession of a cell phone. However, MCL 800.281(4) also prohibits a prisoner's possession of "any alcoholic liquor, prescription drug, poison, or controlled substance." But individuals who are of age in Michigan can legally possess alcohol, prescription drugs, and even certain controlled substances, like marijuana. As with a cell phone, mere possession of alcohol by a prisoner does not necessarily lead to the conclusion that there will be threatening conduct.

Instead of focusing somewhat vaguely on conduct as the distinguishing factor, I wonder whether focusing on the statute's use of the word "threatened" might shine more

2

light on the proper application of OV 19.  Although defendant specifically declined to make such an argument in his briefs to this Court, I am intrigued by an argument raised by Justice MARILYN KELLY: "I believe that scoring points for OV 19 may require that a defendant intend to threaten the security of a penal institution." *People v Ward*, 483 Mich 1071, 1073 (2009) (KELLY, C.J., dissenting).  Specifically, Justice KELLY noted that "OV 19 arguably does include an intent requirement because of the Legislature's use of the word 'threatened.'  Black's Law Dictionary's definition of 'threat' includes the element of the *intention* to cause loss or harm to something." *Id*. at 1075.

Reading "threatened" to include an element of intent would certainly have the benefit of being grounded in the text of the statute, and it would require a showing of more than mere possession.  Assessing intent for a prisoner's possession of any sort of contraband would be a simpler test to employ than determining an item's inherent dangerousness: the majority opinion would seemingly classify a cell phone as less dangerous than heroin, but where would one put marijuana along the scale of dangerous items, or pain medication?  What about a simple toothbrush, which could be fashioned into a weapon?

Unfortunately, because defendant declined to make such an argument, I dissent from the majority's conclusion, as I do not understand the mere nature of a cell phone to sufficiently distinguish this case from *Dickinson* or *Carpenter*.

Richard H. Bernstein

3